Seantre Brian FAULKNER, Appellant,

v.

The STATE of Texas, State.

Nos. 2–95–120–CR through 2–95–122–CR.

Court of Appeals of Texas,
Fort Worth.

Feb. 6, 1997.

David Chapman, Fort Worth, for appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Asst. Chief Appellate Section, Steven W. Conder, Asst. Crim. District Attorney, Greg Pipes & Phil Sorrells, Asst. Crim. District Attorneys, Fort Worth, for appellee.

Before the court En Banc.

## OPINION ON REHEARING

DAUPHINOT, Justice.

This Court has considered both the appellant's and the State's motions for rehearing. We deny their motions and grant rehearing on our own motion. We withdraw the prior

opinion and judgment of June 6, 1996, and issue the following in its place.

In each of these three cases, Appellant Seantre Brian Faulkner was convicted of involuntary manslaughter upon his plea of not guilty to a jury. The jury assessed punishment in each case at ten years' confinement and imposed a $10,000 fine. On appeal, Faulkner presents two points of error, contending the trial court erred by failing to grant a mistrial when the prosecutor commented on Faulkner's failure to testify and by failing to grant a mistrial during closing argument when the prosecutor attempted to change the burden of proof. Because we find that the trial court's instructions to the jury cured the harm, if any, created by the prosecutor's improper comments, we affirm the trial court's judgment and overrule Faulkner's points of error.

## POINT OF ERROR ONE [1]

Faulkner did not testify before the jury during either phase of the trial. The following is the prosecutor's argument that Faulkner complains of in his first point of error:

[PROSECUTOR]:.... You know, you heard in opening statement from the Defense. They made some promises to you, told you some evidence they were going to bring you. They were going to bring you a guy named Mike. And you saw this Mike, Mike Andrews. They also told you some other things that they didn't bring you. Think about those.

[DEFENSE COUNSEL]: Objection. Indirect comment on the failure of the Defendant to testify.

THE COURT: Sustained.

[DEFENSE COUNSEL]: Instruction to disregard.

THE COURT: The Jury will disregard the last statement of Counsel.

[DEFENSE COUNSEL]: I move for a mistrial.

THE COURT: Do you have a response?

[PROSECUTOR]: Yes, Your Honor. I am talking about Robert Maynard.

THE COURT: You need to say Robert Maynard.

[PROSECUTOR]: That was my next statement.

THE COURT: Come up here.

(COUNSEL FOR BOTH SIDES APPROACHED THE BENCH AND THE FOLLOWING DISCUSSION WAS HAD OUTSIDE THE HEARING OF THE JURY)

THE COURT: If you do anything close to that one more time, I will mistry this case. Do you understand that?

[PROSECUTOR]: Yes.

THE COURT: The motion for mistrial is denied.

(THE PROCEEDINGS RETURNED TO OPEN COURT)

THE COURT: And the Jury is instructed you are to in no way take the Prosecutor's last statement as anything other than a reference to Robert Maynard.

[PROSECUTOR]: They told you they would bring you an expert by the name of Robert Maynard. You heard his name several times from several witnesses that he was an accident reconstructionist. They didn't bring you that person. They didn't bring you Robert Maynard. Think about why they didn't.

In his opening statement, Faulkner made the following representations concerning the evidence the defense would bring to the jury:

● Evidence would be shown through the State's witnesses or through defense witnesses.

● Faulkner and his friends went to the races in Kennedale, Texas.

● They drank alcoholic beverages.

● When they ran out of beer, they went to get more beer.

● They visited with Jerry Lollar and Lydia Henshaw, both now deceased.

● Faulkner dropped Keri Fields off at her home.

● Lollar, Henshaw, and Faulkner went to play pool at Fast Freddy's Pool Hall.

1. Substantial portions of the 81(b)(2) discussion found in this opinion were taken directly and verbatim from an analysis of 81(b)(2) written by Justice David Richards.

● Faulkner drank so much beer at the pool hall that his blood alcohol level was in the range of 25 percent.

● Faulkner was intoxicated 2–1/2 times the legal limit.

● Other persons in the vehicle had blood-alcohol levels of 31 percent.

● Another person in the vehicle had a blood-alcohol level of 22 percent.

● There was no alcohol in Henshaw's system.

● While attempting to leave Fast Freddy's Pool Hall, Faulkner got into an argument with other people in the truck.

● The others convinced Faulkner to give up the keys to the truck.

● Faulkner sat in the center seat of the truck.

● Tommy Guerrero and Lollar argued over who was going to drive.

● When they left, Faulkner was seated in the middle of the truck.

● The State's accident reconstruction was done by a private contractor based upon evidence that he received from the district attorney's office.

● An unnamed defense expert would testify that Faulkner was in the middle seat and was not the driver of the truck.

● Dr. Harvey, a former employee of the Tarrant County Medical Examiner's Office, would testify that Faulkner was the driver of the truck.

● Faulkner himself would testify that he was not the driver of the truck.

● Chief of Police Tom Windham might also testify.

The record reflects that all of the witnesses suggested by the defense testified, except for Faulkner.[2]

■■■ The purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone and not on any fact not admitted into evidence.[3] To be permissible, jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement.[4] A comment on the defendant's failure to testify offends both the United States and Texas Constitutions as well as Texas statutory law.[5]

■■■ To determine if a prosecutor's comment violated TEX. CODE CRIM. PROC. ANN. art. 38.08 (Vernon 1979) and constituted an impermissible reference to an accused's failure to testify, we must consider whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily consider it to be a comment on the failure of the accused to testify.[6] When viewed from the standpoint of the jury, the implication that the language used by the prosecutor made reference to the accused's failure to testify must be a necessary one.[7] It is not sufficient that the language *might* be construed as an implied or indirect allusion to the accused's invocation of his Fifth Amendment right to remain silent.[8] However, if the prosecutor's remark called to the jury's attention the absence of evidence that could only be supplied

2. Additionally, there was no testimony about the argument at Fast Freddy's and the decision that Faulkner would ride in the middle as a passenger.

3. *Campbell v. State*, 610 S.W.2d 754, 756 (Tex. Crim.App. [Panel Op.] 1980); *Mack v. State*, 872 S.W.2d 36, 39 (Tex.App.—Fort Worth, 1994, no pet.); *Monkhouse v. State*, 861 S.W.2d 473, 478 (Tex.App.—Texarkana 1993, no pet.).

4. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim.App.1992), *cert. denied*, 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim.App.1973).

5. *See* U.S. CONST. amend. V; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 38.08 (Vernon 1979).

6. *See Montoya v. State*, 744 S.W.2d 15, 35 (Tex. Crim.App.1987), *cert. denied*, 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988); *Curry v. State*, 861 S.W.2d 479, 485–86 (Tex.App.—Fort Worth 1993, pet. ref'd).

7. *Swallow v. State*, 829 S.W.2d 223, 225 (Tex. Crim.App.1992) (citing *Koller v. State*, 518 S.W.2d 373, 375 (Tex.Crim.App.1975)).

8. *Id.*

by the testimony of the accused, the comment is improper.[9]

■ The State contends that the challenged argument, when read in context, is a comment on Faulkner's failure to call a certain witness, Robert Maynard, and is not a comment on Faulkner's failure to testify.

When Faulkner moved for a mistrial after the objected-to argument of the State, the trial judge asked if the State had a response. Only at that point did the prosecutor claim he was talking about Robert Maynard, a person who was not mentioned in opening statement. Indeed, he was mentioned during testimony, and then only briefly. The sole witness named in the opening statement who did not actually take the stand was Faulkner himself.

After the trial court instructed the jury to disregard the prosecutor's statement, there was no further reference to Faulkner's decision not to testify. On appeal, Faulkner argues that the prosecutor's statement was a direct comment on his failure to testify and that the trial court's failure to grant a mistrial was reversible error. The State argues that the comment was proper, was not necessarily a comment on Faulkner's failure to testify, and that any error was cured by the instruction to disregard.

■ The Texas Court of Criminal Appeals has often held that the prohibition against commenting on a defendant's silence at trial is mandatory and thus rarely cured by instruction.[10] However, in more recent cases, the court has made it clear that violation of article 38.08 does not automatically mandate reversal.[11] The reviewing court, if it determines that the trial court erred, must perform a harm analysis.[12]

The prosecutor's argument in this case was a comment on Faulkner's failure to testify, calling the jury's attention to Faulkner's exercise of his Fifth Amendment right not to testify. As such, the argument violates article 38.08 and Faulkner's rights under both the state and federal constitutions.[13] We conclude that the trial court was correct in sustaining Faulkner's objection and instructing the jury to disregard.

■ When the trial court sustains an objection and instructs the jury to disregard but denies a defendant's motion for a mistrial, the issue is whether the trial court erred in denying the mistrial.[14] Its resolution depends on whether the court's instruction to disregard cured any prejudicial effect. In assessing the curative effect of the court's instruction to disregard, the correct inquiry is whether the argument was extreme, manifestly improper, injected new and harmful facts into the case, or violated a mandatory statutory provision and was thus so inflammatory that an instruction to disregard could not cure its prejudicial effect.[15] If the instruction cured any harm caused by the improper argument, a reviewing court should find that the trial court did not err. Almost any improper argument may be cured by an instruction to disregard.[16]

■ Next, the question becomes how, if at all, Appellate Rule 81(b)(2) should be applied by a reviewing court when a trial court provides a curative instruction directing the

---

9. *Madden v. State*, 799 S.W.2d 683, 700 (Tex. Crim.App.1990), *cert. denied*, 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991); *Pollard v. State*, 552 S.W.2d 475, 477 (Tex.Crim.App.1977).

10. *See Montoya*, 744 S.W.2d at 37.

11. *Madden*, 799 S.W.2d at 699 n. 28; *see also Long v. State*, 823 S.W.2d 259, 269–70 (Tex.Crim. App.1991), *cert. denied*, 505 U.S. 1224, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992); *Jackson v. State*, 745 S.W.2d 4, 15 (Tex.Crim.App.), *cert. denied*, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947 (1988).

12. *See Madden*, 799 S.W.2d at 700.

13. *See Montoya*, 744 S.W.2d at 37.

14. *Sauceda v. State*, 859 S.W.2d 469, 474 (Tex. App.—Dallas 1993, pet. ref'd).

15. *Long*, 823 S.W.2d at 267; *Hernandez v. State*, 819 S.W.2d 806, 820 (Tex.Crim.App.1991), *cert. denied*, 504 U.S. 974, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992).

16. *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim.App.), *cert. denied*, — U.S. —, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995); *Anderson v. State*, 633 S.W.2d 851, 855 (Tex.Crim.App. [Panel Op.] 1982); *Hodge v. State*, 631 S.W.2d 754, 759 (Tex. Crim.App. [Panel Op.] 1982).

jurors to disregard an improper jury argument by the State.

TEX. R. APP. P. 81(b)(2) is relatively straightforward:

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless ... the error made no contribution to the conviction or to the punishment.[17]

Application of this rule in the context of improper jury arguments to which an objection has been made and *overruled* by the trial judge is admittedly sometimes not an easy task for the reviewing court, but at least the analytical framework for resolving such issues is well-settled.[18] More problematical is the application of rule 81(b)(2) to situations, such as the case before us, in which the trial court *sustains* a defense objection and thereafter provides the jurors an instruction to disregard the improper argument in an attempt to "cure" it. Review of the case authority shows that reviewing courts have, over the years, developed conflicting approaches to this issue. Those approaches can roughly be divided into two categories.

Under the first approach, once the reviewing court determines that an improper comment by the prosecutor has been properly preserved, the appellate court goes directly to an 81(b)(2) analysis.[19] This approach does not deny the significance of a curative instruction. Consideration of the effect of the instruction is simply done within the framework of rule 81(b)(2), which permits consideration of the curative instruction under the prong of the analysis in the so-called "*Harris* test" concerning the probable weight the jurors placed on the improper argument.[20]

Under the second approach, after finding a properly preserved objection to an improper argument by the prosecutor, the appellate court must first determine whether the trial court's instruction cured the improper remark. Only if the reviewing court determines the instruction was ineffective does the court go on to conduct an 81(b)(2) analysis.[21]

Under the second approach, the State bears no burden of showing lack of harm unless the reviewing court first holds the instruction was insufficient to cure the improper argument. Long before the enactment of rule 81(b)(2) there developed a well-established rule that reviewing courts will presume that an instruction to disregard will be obeyed by the jury.[22]

In contrast, under the "pure" 81(b)(2) analysis inherent in the first approach, the burden is immediately on the State to show no harm under the beyond-a-reasonable-doubt standard.[23]

---

17. TEX. R. APP. P. 81(b)(2).

18. *See, e.g., Orona v. State*, 791 S.W.2d 125, 129–30 (Tex.Crim.App.1990).

19. *See, e.g., Dinkins*, 894 S.W.2d at 357 (improper jury argument that "strikes at the shoulders of counsel" is improper, and "in spite of" any instruction to disregard given by the trial court, "will be analyzed under the framework of Rule 81(b)(2)"). *See also Branson v. State*, 825 S.W.2d 162 (Tex.App.—Dallas 1992, no pet.) (court conducts 81(b)(2) harm analysis without first determining whether the trial court's instruction to disregard cured the error).

20. *See Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim.App.1989).

21. *See, e.g., Bridgewater v. State*, 905 S.W.2d 349, 354 n. 5 (Tex.App.—Fort Worth 1995, no pet.) (appellate brief ruled deficient in containing only 81(b)(2) harm analysis and omitting argument and authorities on issue of whether instruction to disregard cured the "error"); *Green v. State*, 876

S.W.2d 226, 229 (Tex.App.—Beaumont 1994, no pet.).

In yet a third approach, some appellate decisions have stated that if the reviewing court determines the instruction to disregard cured the improper comment, the reviewing court "must still" examine the improper comment under Rule 81(b)(2). *See, e.g., Laca v. State*, 893 S.W.2d 171, 184 (Tex.App.—El Paso 1995, pet. ref'd). This approach is questionable since it is difficult to imagine how a reviewing court could hold the instruction sufficient to "cure" the improper remark, but then rule the improper remark was not harmless.

22. *See Waldo v. State*, 746 S.W.2d 750, 753 (Tex. Crim.App.1988) (citing federal authority for the proposition that only where harm appears "manifest" can the instruction be found of no avail).

23. *Arnold v. State*, 786 S.W.2d 295, 298 (Tex. Crim.App.), *cert. denied*, 498 U.S. 838, 111 S.Ct. 110, 112 L.Ed.2d 80 (1990). (State has burden of proof to establish harmless error under 81(b)(2) since it is the beneficiary of the error.)

■ Based on our review of the various cases involving this issue, we believe that the inconsistent applications exist because of imprecise language used by reviewing courts to characterize an improper argument by the State. For example, in both of the motions for rehearing filed by the parties in the instant case, the improper argument is itself referred to as "the error." [24] That characterization is incorrect. A prosecutor's improper jury argument cannot be "error." [25] Only the trial court can commit an "error." [26] Properly characterized points of error should refer to actions either taken or not taken by the trial court, e.g., "the trial court erred in overruling the objection," or "the trial court erred in failing to grant a mistrial," and should not be phrased in reference to the State, e.g., "the State erred in commenting on the defendant's failure to testify."

The phraseology is critical, given that rule 81(b)(2) requires reversal in all cases where the appellate court finds an "error in the proceedings" which cannot be determined to be harmless beyond a reasonable doubt. If a prosecutor's improper jury argument can itself constitute "error in the proceedings," rule 81(b)(2) (and only that rule) should apply.[27] On the other hand, if "error" can only refer to the actions of the trial court, the reviewing court must first determine wheth-

er the improper argument survived the trial court's curative instruction. If the reviewing court determines the improper remark was cured by the instruction, there is no need for an 81(b)(2) analysis since there is no "error in the proceedings"—a prerequisite to application of rule 81(b)(2).[28]

*Richards v. State,*[29] decided by the Fourteenth Court of Appeals, contains a thoughtful analysis of the issue, and that court reached the same conclusion that we do:

In *Washington v. State,* 822 S.W.2d 110, 117–18 (Tex.App.—Waco 1991), *rev'd on other grounds,* 856 S.W.2d 184 (Tex.Crim. App.1993), the court discussed the analysis to be applied when the State engages in improper jury argument. The court noted that the standards for determining jury argument error and for evaluating possible harm have been inconsistently applied, and have often incorporated the harm analysis into the test for the effectiveness of the instruction. *Id.* at 118. A prosecutor's improper jury argument is not "error"; only the court can commit error. Error occurs when the court (1) overrules an objection to an improper argument, (2) sustains the objection but denies a request for an instruction to disregard, or (3) sustains the objection, gives the instruction and improperly denies a motion for mistri-

**24.** The misuse of the word "error" in describing improper jury argument is not limited to this case. *See, e.g., Felder,* 848 S.W.2d at 95 ("An argument which exceeds these boundaries is error"); *McGee v. State,* 774 S.W.2d 229, 238 (Tex. Crim.App.1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1535, 108 L.Ed.2d 774 (1990) ("The general rule is that an instruction to disregard a comment in jury argument will cure *the error.*") (emphasis added).

**25.** *Richards v. State,* 912 S.W.2d 374, 377 (Tex. App.—Houston [14th Dist.] 1995, pet. ref'd).

**26.** *Id.*

**27.** See Harris, 790 S.W.2d at 594 (Clinton, J., dissenting) ("Where there is error in the proceedings below, the intendment of Rule 81(b)(2) is to mandate reversal unless it can be held beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment").

**28.** Reviewing courts in the past were faced with very similar problems in attempting to conduct harm analyses in appeals involving improper

"parole law" jury instructions. *Brooks v. State,* 768 S.W.2d 481 (Tex.App.—Houston [1st Dist.] 1989, no pet.), contains a good summary of the dilemma:

In *Rose II* [752 S.W.2d 529 (Tex.App.—Dallas 1986)] the court [of criminal appeals] told us to apply the rule 81(b)(2) harmless error test. Under that test, the State has the burden to prove the parole instruction played no role in the jury's assessment of punishment. At the same time *Rose II* told us to apply the rule 81(b)(2) test, it also told us to presume the jury followed the statutory and curative instructions to disregard the parole instruction.

This presents us with a problem: How can we place the burden on the State and at the same time apply the presumption? If we require the State to prove beyond a reasonable doubt that the parole instruction did not contribute to the sentence, we must reverse almost all cases. If, however, we presume the jury did not consider the parole instructions, we must affirm all cases.

*Id.* at 485 (O'Connor, J., dissenting).

**29.** 912 S.W.2d at 377.

al. [citations omitted]. If the court overrules an objection to improper jury argument, error results, and a harm analysis must proceed under Rule 81(b)(2). *Id.*, citing *Orona v. State*, 791 S.W.2d 125, 129–30 (Tex.Crim.App.1990). If an objection to improper jury argument is sustained but the court refuses to instruct the jury to disregard, error results, and a harm analysis must proceed under Rule 81(b)(2). *Id.*, citing *Whiting v. State*, 797 S.W.2d 45, 49 (Tex.Crim.App.1990). However, when a proper objection is sustained and an instruction is given, but a motion for mistrial is denied, it must be determined whether the denial was error before a harm analysis will proceed.[30]

Admittedly, this analysis conflicts somewhat with the approach taken by the Texas Court of Criminal Appeals in *Dinkins*,[31] where only an 81(b)(2) analysis was employed. However, because the Court in *Dinkins* appears not to have been directly called upon to address this exact issue, we believe it is permissible, if not our duty, to reconsider the manner in which reviewing courts have analyzed curative instructions and, in so doing, predict as best we can the result our highest court would reach if presented with this question.

■ In this case, we hold that the trial court's swift action in instructing the jury to disregard the prosecutor's comment and to treat the comment only as a reference to Robert Maynard cured the harm, if any, created by the prosecutor's improper argument. Therefore, there was no error, and thus no need to perform a harm analysis under rule 81(b)(2). To the extent that any of this court's prior decisions conflict with the 81(b)(2) analysis adopted in this opinion, they are disapproved.

### POINT OF ERROR TWO

■ In point of error two, Faulkner again complains that improper argument by the prosecutor should have resulted in a mistrial. Faulkner contends that the prosecutor's argument was an attempt to enlarge Faulkner's burden of proof and diminish the State's burden of proof. The State contends that any misstatement of law was cured by the judge's instruction to disregard and, alternatively, that any error is harmless.

During the final closing argument of the State at guilt-innocence, the prosecutor argued:

[PROSECUTOR]: .... And you will recall that in the pictures that even the Defense Attorneys' expert—Ladies and Gentlemen, in a criminal trial, sixty to seventy-five percent is a failing grade.

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: Sustained.

[DEFENSE COUNSEL]: Can we have an instruction to the Jury to disregard?

THE COURT: The Jury will consider the definition of proof beyond a reasonable doubt that's contained in the Charge that you have received and not a percentage application.

[DEFENSE COUNSEL]: I ask for a mistrial.

THE COURT: Denied.

■ It is improper for the State to present a statement of law that is contrary to that presented in the charge to the jury.[32] But almost any improper argument may be cured by an instruction to disregard.[33]

The State's argument was apparently in response to the testimony of Faulkner's accident reconstruction expert during the guilt-innocence phase in which he opined that Faulkner was not the driver of the car. He further stated that he was sixty to seventy-five percent certain of his conclusions.

We conclude, as we did with Faulkner's first point of error, that the trial court's instruction cured any harm caused by the prosecutor's improper argument. The judge

**30.** *Id.*

**31.** 894 S.W.2d at 357.

**32.** *Whiting v. State*, 797 S.W.2d 45, 48 (Tex.Crim. App.1990); *Branson*, 825 S.W.2d at 167.

**33.** *Dinkins*, 894 S.W.2d at 357; *Anderson*, 633 S.W.2d at 855; *Hodge*, 631 S.W.2d at 759.

correctly instructed the jury that they were only to consider the definition of beyond a reasonable doubt in the charge and disregard the percentage application advanced by the State. There was, then, no error in the proceedings, so rule 81(b)(2) is not implicated. Consequently, we overrule Faulkner's second point of error and affirm the judgment of the trial court.