TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00822-CR






Jason Allen Schirmer, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT


NO. 97-723-K26, HONORABLE WILLIAM S. LOTT, JUDGE PRESIDING 







 A jury convicted Jason Allen Schirmer of four counts of aggravated sexual assault
of a child and one count of indecency with a child. Tex. Penal Code Ann. §§ 22.021, 21.11 (West
1994). The jury assessed punishment at sixty years' confinement for each count of aggravated
sexual assault and twenty years' confinement for the count of indecency with a child. Id.
§§ 12.32, 12.33. In one point of error, appellant contends that the district court erred in denying
his motion for mistrial based on an improper prosecutorial comment on appellant's failure to
testify at the punishment phase of trial. We will affirm.


The Underlying Offenses



 Because appellant does not challenge his conviction, we will summarize the facts
surrounding the underlying offenses only as needed to give a context for the analysis of the
claimed punishment-phase error.

 Appellant, who was seventeen, met C.S., a twelve-year-old boy, at a behavioral
correction school in the Round Rock school district. Appellant told C.S. about a club of older
boys, the White Wolf Club, which could help protect C.S. from bullies. Appellant explained to
C.S. that, to belong to the club, he would have to exchange "essences" with other members during
an initiation involving sexual activity. After first persuading C.S. to fondle him on the bus ride
home from school, appellant began calling C.S. at home. Eventually, appellant brought C.S. to
appellant's residence where he raped C.S.

 Another victim, R.W., also twelve, met appellant when R.W. was visiting a friend
who lived next door to appellant. Appellant began to play sports with R.W. Eventually, appellant
invited R.W. over to appellant's house, showed R.W. a pornographic magazine, and persuaded
R.W. to engage in oral sex.

 The third victim, A.B., thirteen, met appellant through A.B.'s older brother. 
Appellant began giving A.B. rides home from school and told A.B. about the White Wolf Club. 
Appellant performed oral sex on A.B. after appellant threatened A.B. Appellant said that if A.B.
refused, A.B. would be out of the White Wolf club and "then you don't want to know what
happens." Appellant began persistently calling A.B., who eventually informed his parents about
the assault. After A.B. talked to the police, appellant threatened him and told him that anyone
talking to the police would be killed.

Punishment Phase


Testimony

 At the punishment phase of trial, the State called a former cellmate of appellant's,
Michael Laszewski, who testified that he met appellant when the two of them shared a cell at the
Williamson County Jail after appellant's arrest for sexually assaulting A.B. Upon Laszewski's
release from jail, he received two letters from appellant. In one letter, appellant instructed
Laszewski to "jump" A.B., and tell A.B. to drop the charges against appellant or else A.B., the
other two victims, and all of their families would die. In a second letter, appellant instructed
Laszewski to contact one of appellant's friends, to tell him to "hit a money truck" in order to get
appellant out of jail, and also to "get the people to jump A."

 V.H., another State's witness, testified that, several years before trial, her family
and appellant's family were neighbors. V.H. stated that, on one occasion when she was seven
years old, she and appellant were alone together in the garage when appellant unzipped his
trousers and told her to feel his penis, which she did.

 The State also proved that when appellant committed the offense against A.B.,
appellant was on a four-year deferred adjudication for the felony offense of making a false report,
a bomb threat.

 The defense presented several witnesses at punishment. Janice Walker, a counselor
at the high school appellant attended, discussed her experience with appellant as her office aide. 
He was a good worker. She never received complaints about any inappropriate behavior with
other students. She thought he was a good person. Erin King, an English teacher at the school,
said appellant "was a good kid in the classroom." He participated actively in discussions. He
discussed being depressed, but never was a discipline problem in her class. A.A., a friend of
appellant's, testified that appellant sometimes attended bible study at A.A.'s home. A.A. saw
appellant around A.A.'s little brother and A.A. never observed "anything weird."

 Clementina Valadez, one of appellant's neighbors, testified that she was appellant's
godmother. Her family and appellant's family went to the same church and regularly socialized.
She testified that appellant spent a good deal of time around her daughters. They never
complained of inappropriate behavior nor did she observe any. She described appellant as a
gentle, loving person who was having problems in school. She said that she thought if he had an
opportunity to get strict counseling and some assistance in dealing with being a sex offender that
would be good for him. She said:


And as a teacher, I'm always constantly being told to give every child a chance, not
to give up on children, and that's why I see Jason -- I don't see Jason as a 40-year-old that had full faculties of what he was doing and deliberately hurt someone. I
see him as a confused child and [sic] in a man's body, and I just think it would be
a terrible waste to just throw away his life and I don't know what purpose it would
serve.



(Emphasis added.)

 Appellant's mother, Sandra Schirmer, testified about appellant's early life. He was
quiet and daydreamed a lot, but had no major problems until his freshman year in high school
when he began skipping school, failing to do homework, and hanging around the wrong crowd. 
He was never belligerent or violent at home. He had seen counselors for treatment for depression
but she was unaware if he had discussed any sexual issues. He had never confided in her
concerning any of the offenses. She said she would like to see appellant have therapy to deal with
these sexual issues.


Argument


 In closing argument, appellant's counsel argued for a probated or very short
sentence for appellant principally based on appellant's young age. She made comments such as 
"he is a young man and it's very, very possible to turn his life around," that he "had a lot of
potential," and now that they "know what the problem is" he could be effectively helped by
counseling. Counsel emphasized the strict conditions that could be imposed on probation. 
Counsel argued against a life sentence, pointing out that there were no weapons used or severe
physical harm done and that there was "a very, very, very good chance for the victims to recover
from these issues." She then re-urged the issue of appellant's youth.

 In her closing, the prosecutor argued against probation, pointing out that appellant
was on probation when he offended again, thus violating a condition of probation. She pointed
out that neither the probation department nor his family could make appellant be a good citizen. 
She said that the only way to control appellant and protect the community was jail. She then said:
"Why should you assess anything less than the maximum sentence in this case? What has he told
you that merits less than the maximum of life in prison other than the fact perhaps that he's
young?"

 Appellant objected that the prosecutor's comment was an impermissible comment
on appellant's failure to testify and moved for a mistrial. The prosecutor said that she had
phrased her comments badly, asked the district court to sustain the objection, and asked that the
jury be instructed to disregard the statement, which the court did. The district court denied
appellant's motion for a mistrial and admonished the jury that it was not to consider appellant's
failure to testify as a circumstance against him.


Comment on Failure to Testify


 A prosecutor's comment on a defendant's failure to testify is prohibited by both the
federal and state constitutions as well as Texas statutory law. See U. S. Const. amend. V; Tex.
Const. art I, § 10; Tex. Code Crim. Proc. Ann. art. 38.08 (West 1979); Montoya v. State, 744
S.W.2d 15, 31 (Tex. Crim. App. 1987), cert. denied, 487 U. S. 1227 (1988); Lopez v. State, 793
S.W.2d 738, 741 (Tex. App.--Austin 1990), pet. dism'd, 810 S.W.2d 401 (Tex. Crim. App.
1991). To be a prohibited comment, the argument, when viewed from the jury's standpoint, must
manifestly be of such a character that the jury would necessarily and naturally take it as a comment
on the accused's failure to testify. See Swallow v. State, 829 S.W.2d 223, 225 (Tex. Crim. App.
1992) (citing Koller v. State, 518 S.W.2d 373, 375 (Tex. Crim. App. 1975)); Cooper v. State, 959
S.W.2d 682, 686 (Tex. App.--Austin 1997, pet. ref'd). The fact that the language might be
construed as an implied or indirect allusion to a defendant's failure to testify is not sufficient. See
Swallow, 829 S.W.2d at 225. Language that can reasonably be construed to refer to a failure to
present evidence other than from the defendant's own testimony does not amount to a comment
on the failure to testify. Id. The prohibition against commenting on a defendant's silence is
subject to a harm analysis. See Madden v. State, 799 S.W.2d 683, 699-700 (Tex. Crim. App.
1990).


An Improper Comment?


 The focus of appellant's argument is the prosecutor's use of the word "he." 
Appellant contends that the use of "he" had to refer to him as the defendant, not his female
counsel, and thus was a direct comment on his failure to testify at punishment.

 The argument does not refer to testimony that could have come only from appellant. 
See Swallow, 829 S.W.2d at 225. (1) The defense put on several witnesses who all stressed
appellant's youth, using phrases such as "a good kid," and "a child in a man's body." They
stressed a need for therapy based on his youth and the possibility of reform. None of them offered
any reason for leniency other than youth. Although the prosecutor used the singular pronoun
"he," given the number of witnesses all echoing the same theme, the jury reasonably could have
construed the argument to refer to "the defense case," not appellant's testimony, particularly
coming in response to defense counsel's comments on his age. The remark was not aptly phrased,
a matter which the prosecutor immediately acknowledged and joined in rectifying. Neither,
however, was the remark blatant or repeated.


Instruction to Disregard


 Even if the comment was improper, the court's instruction cured any impropriety. 
The district court sustained the objection to the argument and instructed the jury to disregard it. 
In assessing the curative effect of the court's instruction to disregard, the inquiry is whether the
argument was extreme, manifestly improper, injected new and harmful facts into the case, or
violated a mandatory statutory provision and was so inflammatory that an instruction to disregard
could not cure its prejudicial effect. See Long v. State, 823 S. W.2d 259, 267 (Tex. Crim. App.
1991), cert. denied, 505 U. S. 1224 (1992); Faulkner v. State, 940 S.W.2d 308, 312 (Tex.
App.--Fort Worth 1997, pet. ref'd). The court presumes that a trial court's instruction to
disregard will be followed by the jury. See Waldo v. State, 746 S.W.2d 750, 753 (Tex. Crim.
App. 1988) (presumption that comment on failure to testify usually incurable, eroded to point that
it applies only to most blatant examples).

 In this case, the argument was not repeated. The argument was in answer to 
defense testimony concerning appellant's age. The jury heard the same reason, and no other, from
multiple witnesses. The district court's instruction came swiftly. The argument, even if
erroneous, was not so blatant that the instruction could not cure it.

Harmless Error


 Finally, the error, if any, was harmless. A trial court's denial of a mistrial based
on an improper argument is subject to harmless error analysis. See Madden, 799 S.W.2d at 699-
700; Tex. R. App. P. 44.2(a). In determining whether the error is reversible or harmless, we
trace the impact, if any, of the error on the jury. See Harris v. State, 790 S.W.2d 568 (Tex.
Crim. App. 1989). This Court examines the error's interaction with the evidence at trial to
evaluate the impact of the error. Id. at 587. We also consider the arguments of the parties when
making this determination with regard to the improper prosecutorial argument. See Madden, 799
S.W.2d at 700. 

 The jury had evidence before it that appellant did not commit an impulsive, one-time offense, but had engaged in predatory behavior by seeking out and grooming multiple
victims, using lures such as rides home and sports to cultivate a relationship. He threatened the
victims and their families on more than one occasion. There was evidence of a previous bad act
involving sexual activity with a young child, for which he had not been prosecuted. There was
evidence that he was on probation for a bomb threat. Nevertheless, the jury did not impose a life
sentence or even the maximum possible fixed-term sentence. In fact, the jury imposed only
approximately two-thirds of the term it could have imposed. It thus appears that the jury
considered appellant's age as a mitigating factor. Assuming the prosecutor impermissibly
commented on appellant's failure to testify, the error, when examined in light of the evidence,
does not appear to have had an impact on the jury in imposing sentence. See Harris, 790 S.W.2d
at 587. The district court did not err in denying appellant's motion for mistrial.

 Accordingly, we overrule appellant's single point of error. We affirm the district-court judgment and sentence.



 

 Lee Yeakel, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: May 27, 1999

Do Not Publish
1. An example illustrating an improper comment referring to testimony that could only come
from the defendant is found in Angel v. State, 627 S.W.2d 424 (Tex. Crim. App.1982). The
prosecutor argued that the defendant's exposing himself was "just basically what is not contested
in this case. It's not being contested." Id. at 425. The only two witnesses to the offense were
the victim and the perpetrator. Therefore, the court held that because the defendant was the only
other witness who could have supplied controverting evidence, the remarks called the jury's
attention to the absence of evidence that only testimony from the defendant could supply and thus
were an improper comment on his failure to testify. Id. at 426. See also Trevino v. State, 979
S.W.2d 78, 80 (Tex. App.--Austin 1998, pet. filed); Norton v. State, 851 S.W.2d 341, 344 (Tex.
App.--Dallas 1993, pet. ref'd).



ing. Neither,
however, was the remark blatant or repeated.


Instruction to Disregard


 Even if the comment was improper, the court's instruction cured any impropriety. 
The district court sustained the objection to the argument and instructed the jury to disregard it. 
In assessing the curative effect of the court's instruction to disregard, the inquiry is whether the
argument was extreme, manifestly improper, injected new and harmful facts into the case, or
violated a mandatory statutory provision and was so inflammatory that an instruction to disregard
could not cure its prejudicial effect. See Long v. State, 823 S. W.2d 259, 267 (Tex. Crim. App.
1991), cert. denied, 505 U. S. 1224 (1992); Faulkner v. State, 940 S.W.2d 308, 312 (Tex.
App.--Fort Worth 1997, pet. ref'd). The court presumes that a trial court's instruction to
disregard will be followed by the jury. See Waldo v. State, 746 S.W.2d 750, 753 (Tex. Crim.
App. 1988) (presumption that comment on failure to testify usually incurable, eroded to point that
it applies only to most blatant examples).

 In this case, the argument was not repeated. The argument was in answer to 
defense testimony concerning appellant's age. The jury heard the same reason, and no other, from
multiple witnesses. The district court's instruction came swiftly. The argument, even if
erroneous, was not so blatant that the instruction could not cure it.

Harmless Error


 Finally, the error, if any, was harmless. A trial court's denial of a mistrial based
on an improper argument is subject to harmless error analysis. See Madden, 799 S.W.2d at 699-
700; Tex. R. App. P. 44.2(a). In determining whether the error is reversible or harmless, we
trace the impact, if any, of the error on the jury. See