COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-032-CR

 

 

KELLI MORNING GLORY ESTELL                                            APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL
DISTRICT COURT NO. 4 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

------------

I. Introduction

In three issues, Appellant Kelli Morning Glory
Estell appeals her conviction of kidnapping and unlawful restraint.  We affirm. 

 

 








II. Factual and Procedural History

On April 28, 2005, Maria Acosta took her
four-year-old son, Brian, outside to play in the courtyard of her apartment
complex.  Acosta=s
neighbors, including three other children, were also playing in the area.  Acosta saw Appellant, whom she did not know,
standing near the area where the children were playing.  After a few minutes, Acosta went inside her
apartment to get a sweater for Brian; when she returned, Brian was
missing.  Acosta searched around the
apartment complex but was unable to find Brian. 
She then called the police.








Cindy Liner, an Arlington police services=
assistant, was the first to arrive at the apartment complex.  During Liner=s
investigation she learned that a four-year-old boy playing in the courtyard
with Brian had seen a woman take Brian to a particular apartment.  Liner walked to the specified apartment and
Acosta followed.  Liner knocked on the
door very loudly for three to four minutes while announcing, AThis is
the police department, you need to answer the door.@  The apartment door was closed and the window=s blinds
were drawn.  No one answered the door, so
eventually Liner left to speak with her lieutenant.  Acosta stayed at the apartment and continued
to knock on the door.  Acosta peeked
through an opening in the blinds and saw Brian=s feet
dangling from a chair.  Acosta shouted to
her son to unlock the door.  Brian
unlocked the door, but when Acosta tried to enter the apartment, Appellant
attempted to close the door on her. 
After Acosta was able to enter the apartment, she noticed that Brian=s shirt
had been changed from a red t-shirt to an adult=s
oversized white t-shirt.  Appellant and
Brian were the only people in the apartment. 

Appellant testified that she was sitting outside
of the apartment when Brian wandered up to her and asked her for a glass of
water.  She asserted that he then
followed her into the apartment, and she began to ask him where he lived.  She claimed that after he finished his water
she walked with him around the apartment complex to try and find his home.  She claimed that she never saw Acosta or
anyone else searching for Brian.  When
she could not locate his home or parent, she took him back to the apartment
where she put a clean shirt on the boy. 
Appellant testified that she did not answer the door when Liner knocked
because she was using the bathroom. 

Appellant was charged with kidnapping and
unlawful restraint, to which she pleaded not guilty.  The jury returned a guilty verdict on both
charges.  The State then waived Appellant=s
conviction of unlawful restraint, and the case was submitted to the jury for
punishment on the kidnapping conviction only. 
The jury assessed Appellant=s
punishment at five years= confinement, probated for five
years.  The trial court sentenced
Appellant accordingly. 

 








III. Jury Argument 

In Appellant=s first
issue, she contends that she was deprived a fair trial when the State attacked
her over counsel=s shoulder during jury argument
on two separate occasions. 

A. Applicable Law

To be permissible, the State=s jury argument
must fall within one of the following four general areas: (1) summation of the
evidence; (2) reasonable deduction from the evidence; (3) answer to argument of
opposing counsel; or (4) plea for law enforcement.  Felder v. State, 848 S.W.2d 85, 94-95
(Tex. Crim. App. 1992), cert. denied, 510 U.S. 829 (1993); Alejandro
v. State, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). 








If a jury argument exceeds the bounds of proper argument,
the trial court=s erroneous overruling of a defendant=s objection is not
reversible error unless it affected the appellant=s substantial
rights.  Tex. R. App. P. 44.2(b); Martinez v. State, 17 S.W.3d
677, 692-93 (Tex. Crim. App. 2000); Mosley v. State, 983 S.W.2d 249, 259
(Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999).  In
determining whether the appellant=s substantial
rights were affected, we consider (1) the severity of the misconduct (i.e., the
prejudicial effect of the prosecutor=s remarks), (2)
curative measures, and (3) the certainty of conviction absent the
misconduct.  Martinez, 17 S.W.3d
at 692-93; Mosley, 983 S.W.2d at 259. 

When the trial court sustains an objection and
instructs the jury to disregard but denies a defendant=s motion
for a mistrial, the issue is whether the trial court abused its discretion in
denying the mistrial.  Hawkins v. State,
135 S.W.3d 72, 77 (Tex. Crim. App. 2004); Faulkner v. State, 940
S.W.2d 308, 312 (Tex. App.CFort
Worth 1997, pet. ref=d) (en banc op. on reh=g).  Its resolution depends on whether the court=s
instruction to disregard cured any prejudicial effect.  Faulkner, 940 S.W.2d at 312.  We presume the jury complied with an
instruction to disregard improper jury argument.  Wesbrook v. State, 29 S.W.3d 103, 116
(Tex. Crim. App. 2000) (citing Colburn v. State, 966 S.W.2d 511, 520
(Tex. Crim. App. 1998)).  In most
instances, an instruction to disregard is sufficient to cure error in jury
argument.  See Wilkerson v. State,
881 S.W.2d 321, 327 (Tex. Crim. App. 1994).








In assessing the curative effect of the court=s
instruction to disregard, the correct inquiry is whether the argument was
extreme, manifestly improper, injected new and harmful facts into the case, or
violated a mandatory statutory provision and was thus so inflammatory that an
instruction to disregard could not cure its prejudicial effect.  Faulkner, 940 S.W.2d at 312.  Only offensive or flagrant error warrants
reversal when there has been an instruction to disregard.  Wesbrook, 29 S.W.3d at 116.  If the instruction cured any harm caused by
the improper argument, a reviewing court should find that the trial court did
not err.  Dinkins v. State, 894
S.W.2d 330, 357 (Tex. Crim. App. 1995); Faulkner, 940 S.W.2d at 312. 

A prosecutor risks improperly striking at a defendant over
the shoulder of counsel when the argument refers to defense counsel personally
and when the argument explicitly impugns defense counsel=s character.  Mosley v. State, 983 S.W.2d 249, 259
(Tex. Crim. App. 1988) (op. on reh=g); Guy v.
State, 160 S.W.3d 606, 617 (Tex. App.CFort Worth 2005,
pet. ref=d).  The Aover‑the‑shoulder@ rule is designed
to protect the defendant from improper prosecutorial character attacks directed
at defense counsel.  Coble v. State,
871 S.W.2d 192, 205 (Tex. Crim. App. 1993), cert. denied, 513 U.S. 829
(1994).  When evaluating an alleged
improper argument, an appellate court views the statement in the context of the
entire argument.  Mosley, 983
S.W.2d at 259.

B. Argument One

Appellant complains that the following remarks
made by the prosecutor during closing arguments struck at her over the
shoulders of counsel:








[Prosecutor]: And they
can get up here and spout words like good Samaritan all day long. But there=s one fact they will
never be able to get past, even with how many lawyers they want to put over
there.

 

The trial court overruled the defense=s
objection.  Appellant now contends that
the State=s reference to the number of
lawyers representing her at trial was so prejudicial as to deprive her of a
fair trial.[2]








In determining whether the State=s
comments improperly struck at Appellant over counsel=s
shoulder, we view the comment in the context of the entire argument.  See Mosely, 983 S.W.2d at 259.  The State=s closing argument
was directed at the credibility of Appellant=s defensive theory
which likened Appellant to a Agood
Samaritan@ who was simply trying to
reunite Brian with his mother after he wandered up to Appellant and asked her
for a drink of water.[3]  The State argued that the credibility of
Appellant=s story could be determined by examining
the details of the case and that the crux of the issue was whether the jury
believed Appellant=s story or everyone else.

After reviewing the alleged improper comment within the
context of the entire argument, we determine that rather
than impugning defense counsel, the State=s
comment was directed at the credibility of the defense argument: that no matter
how many attorneys represented Appellant, the defensive theory of Appellant
having acted as a Agood Samaritan@ simply
was not credible.  See Mosley, 983 S.W.2d at
259.  Within the State=s
closing argument the prosecutor argued that if Appellant truly had been acting
as a Agood
Samaritan,@ she would have done everything
she could to locate Brian=s mother.  However, the State argued that the details of
the case reflected that








Appellant=s actions did not support her
testimony and therefore, Appellant=s
testimony was not credible.  The State
pointed out that although Appellant testified that she searched for Brian=s mom
throughout the apartment complex, she just happened to search in the exact
opposite direction of where Acosta and the police were searching; that
Appellant=s apartment window faced the
courtyard where dozens of people passed through searching for Brian and calling
his name, and yet Appellant claimed she did not hear the yelling; and despite
Appellant=s purported desire to help Brian
find his mom, Appellant did not try to get police assistant Liner=s attention
even though she saw Liner walk away from her apartment door.  

We conclude that when the alleged improper
comment is read in the context of the State=s entire
argument it is clear that the comment was not directed at defense counsel
but at the credibility of defense counsel=s argument.  Therefore, the State=s prosecutor did
not strike at Appellant over defense counsel=s shoulders.  See Coble, 871 S.W.2d at 205.  Thus, the trial court did not err by
overruling Appellant=s objection. 

C. Argument Two

Appellant contends that the trial court erred by
denying her motion for mistrial after the prosecutor made the following comment
during closing argument: 

Oh you know, I was over
by the phone and I did see children, but blah, blah, blah.  I mean, there was so many different ways she
incorporated her story, she had the testimony. 
But you know when she got stuck? 
When I asked about the window that looked in the courtyards.  Remember that?  She didn=t have a good answer for that.  Her attorney didn=t give her a good story
to tell there. 

 

Defense counsel immediately lodged a successful objection and asked
that the jury be instructed to disregard the comment.  The trial court complied but refused to grant
defense counsel=s subsequent request for a
mistrial.  








Although it is fair to say that the prosecutor
improperly struck at Appellant over counsel=s
shoulder, the trial court quickly sustained Appellant=s
objection and instructed the jury to disregard the prosecutor=s
remarks.  The statement was not so
extreme or manifestly improper that it could not be cured by an instruction to
disregard.  See Wesbrook, 29
S.W.3d at 115 (holding that prosecutor=s
comment that Adefendant had to come up with
some story . . . two different stories.  One to Detective Fikaris and one to you@ was not
so flagrant that the instruction to disregard was ineffective); Wilkerson v.
State, 881 S.W.2d 321, 327 (Tex. Crim. App. 1994); Tilbury v. State,
890 S.W.2d 219, 223 (Tex. App.CFort
Worth 1994, no pet.) (holding that prosecutor=s
comment that defense counsel tried to Amuddy
the waters@ was improper as striking
defendant over the shoulder of counsel, but the trial court=s
instruction to disregard cured any error). 
Furthermore, the prosecutor=s
comment was brief and was not reiterated after the trial court sustained
Appellant=s objection and instructed the
jury to disregard.  See Dillard v.
State, 2007 WL 3342029, at *3 (Tex. App.CHouston
[14th Dist.] Nov. 13, 2007, no pet. h.) (mem. op.) (not designated for
publication).  Because the record shows
no evidence to the contrary, we assume the jury followed the trial court=s
instruction to disregard.  See Gardner
v. State, 730 S.W.2d 675, 696 (Tex. Crim. App.), cert. denied, 484
U.S. 905 (1987).  








We conclude that the trial court did not abuse
its discretion by denying Appellant=s motion
for mistrial because the trial court=s
instruction to disregard was sufficient to cure any prejudicial effect of the
State=s
improper comment. See Wilkerson, 881 S.W.2d at 327.  Accordingly, we hold that the trial court=s
instruction to disregard cured the error, and the trial court acted within its
discretion by denying Appellant=s
request for mistrial.  Thus, we overrule
Appellant=s first issue. 

IV. Sufficiency of the Evidence

In Appellant=s second
and third issues, she argues that the evidence was factually insufficient to
show that she committed the offenses of kidnapping and unlawful restraint. 

A. Applicable Law








When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Watson v.
State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas v. State,
175 S.W.3d 795, 799 (Tex. Crim. App. 2005). 
We then ask whether the evidence supporting the conviction, although
legally sufficient, is nevertheless so weak that the fact‑finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact‑finder=s determination is manifestly
unjust.  Watson, 204 S.W.3d at 414‑15,
417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417. 








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Id.  We cannot conclude that a conviction is
clearly wrong or manifestly unjust simply because we would have decided
differently than the jury or because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the fact‑finder=s.  Johnson, 23 S.W.3d at 12; Cain v.
State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, we must give due deference to the fact‑finder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Id. at 9.

An opinion addressing factual sufficiency must
include a discussion of the most important and relevant evidence that supports
the appellant=s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).  Moreover, an
opinion reversing and remanding on factual insufficiency grounds must detail
all the evidence and clearly state why the finding in question is factually
insufficient and under which ground.  Goodman
v. State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); Johnson, 23
S.W.3d at 7.

B. Kidnapping Offense

Appellant contends that the evidence is factually
insufficient to show that she had the intent to secrete or hold Brian in a
place where he was unlikely to be found. 

Under the Texas Penal Code, a person commits the
offense of kidnapping if she intentionally or knowingly abducts another
person.  Tex. Penal Code Ann. ' 20.03
(Vernon 2003).  AAbduct@ means
to restrain a person with intent to prevent his liberation by secreting or
holding him in a place where he is not likely to be found, or by using or
threatening to use deadly force.  Id. ' 20.01(2)
(Vernon Supp. 2007).








A person acts intentionally, or with intent, with
respect to the nature of her conduct or to a result of her conduct when it is
her conscious objective or desire to engage in the conduct or cause the result.
 Id. ' 6.03(a).  A person acts knowingly, or with knowledge,
with respect to the nature of her conduct or to circumstances surrounding her
conduct when she is aware of the nature of her conduct or that the circumstances
exist. Id. ' 6.03(b).  A person acts knowingly, or with knowledge,
with respect to a result of her conduct when she is aware that her conduct is
reasonably certain to cause the result.  Id.








If the actor intended at any time during the
restraint to secrete or hold the victim in a place where he would not likely be
found, the offense is complete. Santellan v. State, 939 S.W.2d 155, 162
(Tex. Crim. App. 1997); Laster v. State, 229 S.W.3d 788, 792 (Tex. App.CFort
Worth 2007, pet. struck); Price v. State, 35 S.W.3d 136, 140
(Tex. App.CWaco 2000, pet. ref=d) (op.
on reh=g); King
v. State, 961 S.W.2d 691, 694 (Tex. App.CAustin
1998, pet. ref=d).  Intent is a question of fact to be determined
from all of the circumstances.  Smith
v. State, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998). Intent may be
inferred from the circumstantial evidence surrounding an incident including the
acts, words, and conduct of the accused.  Id.; Patrick v. State, 906 S.W.2d 481, 487
(Tex. Crim. App. 1995), cert. denied, 517 U.S. 1106 (1996); Laster,
229 S.W.3d at 792‑93.  Proof that a
victim is isolated from anyone who might be of assistance shows an intent to
secrete or hold the victim in a place where he is not likely to be found.  Laster, 229 S.W.3d at 793; see
Megas v. State, 68 S.W.3d 234, 241 (Tex. App.CHouston
[1st Dist.] 2002, pet. ref=d).

In this case, Appellant contends that the fact
that Brian wandered to her apartment on his own and entered the apartment
because he wanted a drink of water demonstrates her lack of intent.  She further asserts that Brian was not in a
place where he was unlikely to be found because he was visible through her
apartment window from the outside, public area. 








        After reviewing the evidence in a neutral light, we determine
that the facts Appellant point to as evidence of her lack of intent actually
weigh in favor of the opposite conclusion. 
See Watson, 204 S.W.3d at 414; Laster, 229 S.W.3d
at 794.  The record shows that the jury
was presented with evidence that directly contradicted Appellant=s
assertions that she did not intend to secrete Brian or hold him in a place he
was unlikely to be found.  Acosta testified
that when she first went out to the courtyard she noticed Appellant, whom she
did not know, standing close to the children and watching them.  When Acosta came back outside after
retrieving a sweater for Brian she noticed that he was no longer with the other
children.  A child playing with Brian in
the courtyard told police services assistant Liner that he saw Appellant take
Brian from the courtyard to her apartment. 
This evidence contradicts Appellant=s
assertions that Brian merely wandered over to her apartment because he wanted a
drink of water and that she only took Brian back to her apartment after she was
unsuccessful in locating his mother.  








Further, the fact that Appellant took Brian to
her apartment, a private residence that was not accessible to the public, is
significant in determining whether Appellant had the intent to secrete
Brian.  Proof that a victim is isolated
from anyone who might be of assistance shows an intent to secrete or hold the
victim in a place where he is not likely to be found.  Laster, 229 S.W.3d at 793.  A jury could reasonably infer by Appellant=s
conduct that she intended to isolate Brian by removing him from the courtyard
where the other children were playing.  See Smith, 965 S.W.2d at 518.  Furthermore, it is unlikely that Brian=s
whereabouts would have become known had it not been for the fact that a child
who witnessed Appellant taking Brian from the courtyard specifically identified
Appellant=s apartment as the location
where Brian was taken.  When Acosta and
Liner arrived at Appellant=s
apartment, the window shades were drawn, the door was locked, and no one
answered despite their persistent knocking.[4]  Acosta was only able to determine that her
son was inside the apartment when she got a glimpse of his feet through the
window shade.  These facts contradict
Appellant=s claim that Brian was in a
place where he was likely to be found, and the jury was free to reject
Appellant=s statement that she did not
intend to secrete Brian in light of this evidence.[5]  See Laster, 229 S.W.3d at 793. 

After reviewing the evidence in a neutral light
and giving deference to the jury=s
determinations on the weight and credibility of evidence, we hold that the
evidence Appellant presented does not so greatly outweigh the evidence
supporting the conviction that the fact-finder=s
conviction was manifestly unjust, nor, has the record clearly revealed that a
different result is appropriate.  See
Watson, 204 S.W.3d at 414‑15, 417; Johnson, 23 S.W.3d at 8,
11. 








Based on the foregoing and the applicable
standards of review, we hold that the evidence is factually sufficient to
support Appellant=s conviction for
kidnapping.  Therefore, we overrule
Appellant=s second issue.

C. Unlawful Restraint Offense

Appellant contends that the evidence was
factually insufficient to show that she committed the offense of unlawful
restraint. 

Rule 25.2(a)(2) of the Texas Rules of Appellate
Procedure authorizes the trial court to enter a certification of a defendant=s right
of appeal from a judgment of guilt or other appealable order.  See Tex.
R. App. P. 25.2(a)(2).  

Here, Appellant was convicted of kidnapping and unlawful
restraint.  However, the State waived
Appellant=s conviction of unlawful
restraint, and the case was submitted to the jury for punishment on the
kidnapping conviction only.  The trial
court never entered a judgment of guilt for unlawful restraint.  Therefore, Appellant has no right to appeal
her conviction of unlawful restraint because the trial court never entered a
judgment of guilt on that offense or other order.  See Mayes v. State, 2005 WL 2898144, at *1
(Tex. App.CAmarillo Nov. 3, 2005, no pet.)
(mem. op) (not designated for publication). 
Accordingly, we overrule Appellant=s third
issue. 

 

 








V. Conclusion

Having
overruled Appellant=s three issues, we affirm
the trial court=s judgment. 

 

 

BOB
MCCOY

JUSTICE

 

PANEL B:   LIVINGSTON,
WALKER, and MCCOY, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED: January 31,
2008











[1]See Tex. R. App. P. 47.4.





[2]The State had two lawyers
at trial while Appellant had three lawyers present.





[3]This defensive theory was
maintained throughout the entire trial. 
During opening statement, Appellant=s trial counsel asserted that after Brian
wandered up to Appellant, she gave him some water and then walked with him
around the complex trying to locate his mother; only when they were unable to
find his mother did she take him back to her apartment, give him some more
water, and change his shirt because it was filthy.

During cross-examination,
Appellant=s trial counsel attempted
to portray Appellant as a good Samaritan who had been denied the opportunity to
explain her actions.

Lastly,
Appellant testified that she intended to reunite Brian with his mother, and
that she had only been trying to be a good Samaritan and help Brian.





[4]Police services assistant
Liner testified that she knocked for approximately three to four minutes while
simultaneously announcing the presence of the police.





[5]Appellant=s attempt to analogize
her situation to Beeman v. State, 828 S.W.2d 265 (Tex. App.CFort Worth 1992, writ ref=d) is erroneous.  In that case, this court held that where the
appellant took the clerk from the main area of the convenience store into a
storeroom that was visible from the store=s public restroom, the evidence was insufficient
to show that the appellant took the clerk to a place where she was unlikely to
be found.  Here, Appellant took Brian to
a private residence that, unlike a convenience store, was not accessible to the
public.  The door was closed and locked,
and the blinds were drawn.  The only
reason Acosta was able to see her son was because she caught a glimpse of his
shoes through an opening in the blinds.