COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-07-032-CR

KELLI MORNING GLORY ESTELL APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. Introduction

In three issues, Appellant Kelli Morning Glory Estell appeals her conviction of kidnapping and unlawful restraint.  We affirm. 

II. Factual and Procedural History

On April 28, 2005, Maria Acosta took her four-year-old son, Brian, outside to play in the courtyard of her apartment complex.  Acosta’s neighbors, including three other children, were also playing in the area.  Acosta saw Appellant, whom she did not know, standing near the area where the children were playing.  After a few minutes, Acosta went inside her apartment to get a sweater for Brian; when she returned, Brian was missing.  Acosta searched around the apartment complex but was unable to find Brian.  She then called the police.

Cindy Liner, an Arlington police services’ assistant, was the first to arrive at the apartment complex.  During Liner’s investigation she learned that a four-year-old boy playing in the courtyard with Brian had seen a woman take Brian to a particular apartment.  Liner walked to the specified apartment and Acosta followed.  Liner knocked on the door very loudly for three to four minutes while announcing, “This is the police department, you need to answer the door.”  The apartment door was closed and the window’s blinds were drawn.  No one answered the door, so eventually Liner left to speak with her lieutenant.  Acosta stayed at the apartment and continued to knock on the door.  Acosta peeked through an opening in the blinds and saw Brian’s feet dangling from a chair.  Acosta shouted to her son to unlock the door.  Brian unlocked the door, but when Acosta tried to enter the apartment, Appellant attempted to close the door on her.  After Acosta was able to enter the apartment, she noticed that Brian’s shirt had been changed from a red t-shirt to an adult’s oversized white t-shirt.  Appellant and Brian were the only people in the apartment. 

Appellant testified that she was sitting outside of the apartment when Brian wandered up to her and asked her for a glass of water.  She asserted that he then followed her into the apartment, and she began to ask him where he lived.  She claimed that after he finished his water she walked with him around the apartment complex to try and find his home.  She claimed that she never saw Acosta or anyone else searching for Brian.  When she could not locate his home or parent, she took him back to the apartment where she put a clean shirt on the boy.  Appellant testified that she did not answer the door when Liner knocked because she was using the bathroom. 

Appellant was charged with kidnapping and unlawful restraint, to which she pleaded not guilty.  The jury returned a guilty verdict on both charges.  The State then waived Appellant’s conviction of unlawful restraint, and the case was submitted to the jury for punishment on the kidnapping conviction only.  The jury assessed Appellant’s punishment at five years’ confinement, probated for five years.  The trial court sentenced Appellant accordingly. 

III. Jury Argument 

In Appellant’s first issue, she contends that she was deprived a fair trial when the State attacked her over counsel’s shoulder during jury argument on two separate occasions. 

A. Applicable Law

To be permissible, the State’s jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. 
 Felder v. State
, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992), 
cert. denied
, 510 U.S. 829 (1993); 
Alejandro v. State
, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). 

If a jury argument exceeds the bounds of proper argument, the trial court’s erroneous overruling of a defendant’s objection is not reversible error unless it affected the appellant’s substantial rights.  
Tex. R. App. P. 
44.2(b); 
Martinez v. State
, 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000); 
Mosley v. State
, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g), 
cert. denied
, 526 U.S. 1070 (1999).  In determining whether the appellant’s substantial rights were affected, we consider (1) the severity of the misconduct (i.e., the prejudicial effect of the prosecutor’s remarks), (2) curative measures, and (3) the certainty of conviction absent the misconduct.  
Martinez
, 17 S.W.3d at 692-93; 
Mosley
, 983 S.W.2d at 259. 

When the trial court sustains an objection and instructs the jury to disregard but denies a defendant’s motion for a mistrial, the issue is whether the trial court abused its discretion in denying the mistrial. 
 
Hawkins v. State
, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); 
Faulkner v. State
, 940 S.W.2d 308, 312 (Tex. App.—Fort Worth 1997, pet. ref’d) (en banc op. on reh’g).  Its resolution depends on whether the court’s instruction to disregard cured any prejudicial effect.  
Faulkner
, 940 S.W.2d at 312
.  
We presume the jury complied with an instruction to disregard improper jury argument.  
Wesbrook v. State
, 29 S.W.3d 103, 116 (Tex. Crim. App. 2000) (citing 
Colburn v. State
, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998)). 
 In most instances, an instruction to disregard is sufficient to cure error in jury argument. 
 See Wilkerson v. State
, 881 S.W.2d 321, 327 (Tex. Crim. App. 1994).

In assessing the curative effect of the court’s instruction to disregard, the correct inquiry is whether the argument was extreme, manifestly improper, injected new and harmful facts into the case, or violated a mandatory statutory provision and was thus so inflammatory that an instruction to disregard could not cure its prejudicial effect.  
Faulkner
, 940 S.W.2d at 312.  Only offensive or flagrant error warrants reversal when there has been an instruction to disregard.  
Wesbrook
, 29 S.W.3d at 116.  If the instruction cured any harm caused by the improper argument, a reviewing court should find that the trial court did not err.  
Dinkins v. State
, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995); 
Faulkner
, 940 S.W.2d at 312. 

A prosecutor risks improperly striking at a defendant over the shoulder of counsel when the argument refers to defense counsel personally and when the argument explicitly impugns defense counsel’s character.  
Mosley v. State
, 983 S.W.2d 249, 259 (Tex. Crim. App. 1988) (op. on reh’g); 
Guy v. State
, 160 S.W.3d 606, 617 (Tex. App.—Fort Worth 2005, pet. ref’d).  
The “over-the-shoulder” rule is designed to protect the defendant from improper prosecutorial character attacks directed at defense counsel. 
 Coble v. State
, 871 S.W.2d 192, 205 (Tex. Crim. App. 1993),
 cert. denied
, 513 U.S. 829 (1994). 
 When evaluating an alleged improper argument, an appellate court views the statement in the context of the entire argument.  
Mosley
, 983 S.W.2d at 259.

B. Argument One

Appellant complains that the following remarks made by the prosecutor during closing arguments struck at her over the shoulders of counsel:

[Prosecutor]: And they can get up here and spout words like good Samaritan all day long. But there’s one fact they will never be able to get past, even with how many lawyers they want to put over there.

The trial court overruled the defense’s objection.  Appellant now contends that the State’s reference to the number of lawyers representing her at trial was so prejudicial as to deprive her of a fair trial.
(footnote: 2)
 In determining whether the State’s comments improperly struck at Appellant over counsel’s shoulder, we view the comment in the context of the entire argument. 
 See Mosely
, 983 S.W.2d at 259.  
The State’s closing argument was directed at the credibility of Appellant’s defensive theory which 
likened Appellant to a “good Samaritan” who was simply trying to reunite Brian with his mother after he wandered up to Appellant and asked her for a drink of water.
(footnote: 3)  
The State argued that the credibility of Appellant’s story could be determined by examining the details of the case and that the crux of the issue was whether the jury believed Appellant’s story or everyone else.

After reviewing the alleged improper comment within the context of the entire argument, we determine that 
rather than impugning defense counsel, the State’s comment was directed at the credibility of the defense argument: that no matter how many attorneys represented Appellant, the defensive theory of Appellant having acted as a “good Samaritan” simply was not credible.  
See Mosley
, 983 S.W.2d at 259. 
 Within the State’s closing argument the prosecutor argued that if Appellant truly had been acting as a “good Samaritan,” she would have done everything she could to locate Brian’s mother.  However, the State argued that the details of the case reflected that

Appellant’s actions did not support her testimony and therefore, Appellant’s testimony was not credible. 
 The State pointed out that although Appellant testified that she searched for Brian’s mom throughout the apartment complex, she just happened to search in the exact opposite direction of where Acosta and the police were searching; that Appellant’s apartment window faced the courtyard where dozens of people passed through searching for Brian and calling his name, and yet Appellant claimed she did not hear the yelling; and despite Appellant’s purported desire to help Brian find his mom, Appellant did not try to get police assistant Liner’s attention even though she saw Liner walk away from her apartment door.  

We conclude that when the alleged improper comment is read in the context of the State’s entire argument it is clear that the comment was not directed 
at defense counsel but at the credibility of defense counsel’s argument.  Therefore, 
the State’s prosecutor did not 
strike at Appellant over defense counsel’s shoulders. 
 See Coble
, 871 S.W.2d at 205.  
Thus, the trial court did not err 
by overruling Appellant’s objection. 

C. Argument Two

Appellant contends that the trial court erred by denying her motion for mistrial after the prosecutor made the following comment during closing argument: 

Oh you know, I was over by the phone and I did see children, but blah, blah, blah.  I mean, there was so many different ways she incorporated her story, she had the testimony.  But you know when she got stuck?  When I asked about the window that looked in the courtyards.  Remember that?  She didn’t have a good answer for that.  Her attorney didn’t give her a good story to tell there. 

Defense counsel immediately lodged a successful objection and asked that the jury be instructed to disregard the comment.  The trial court complied but refused to grant defense counsel’s subsequent request for a mistrial.  

Although it is fair to say that the prosecutor improperly struck at Appellant over counsel’s shoulder, the trial court quickly sustained Appellant’s objection and instructed the jury to disregard the prosecutor’s remarks.  The statement was not so extreme or manifestly improper that it could not be cured by an instruction to disregard.  
See Wesbrook
, 29 S.W.3d at 115 (holding that prosecutor’s comment that “defendant had to come up with some story . . . two different stories.  One to Detective Fikaris and one to you” was not so flagrant that the instruction to disregard was ineffective);
 Wilkerson v. State
, 881 S.W.2d 321, 327 (Tex. Crim. App. 1994)
; 
Tilbury v. State
, 890 S.W.2d 219, 223 (Tex. App.—Fort Worth 1994, no pet.) (holding that prosecutor’s comment that defense counsel tried to “muddy the waters” was improper as striking defendant over the shoulder of counsel, but the trial court’s instruction to disregard cured any error).  Furthermore, the prosecutor’s comment was brief and was not reiterated after the trial court sustained Appellant’s objection and instructed the jury to disregard.  
See Dillard v. State,
 2007 WL 3342029, at *3 (Tex. App.—Houston [14th Dist.] Nov. 13, 2007, no pet. h.) (mem. op.) (not designated for publication).  Because the record shows no evidence to the contrary, we assume the jury followed the trial court’s instruction to disregard. 
 See Gardner v. State
, 730 S.W.2d 675, 696 (Tex. Crim. App.), 
cert. denied
, 484 U.S. 905 (1987).  

We conclude that the trial court did not abuse its discretion by denying Appellant’s motion for mistrial because the trial court’s instruction to disregard was sufficient to cure any prejudicial effect of the State’s improper comment.
 See Wilkerson, 
881 S.W.2d at 327.  Accordingly, we hold that the trial court’s instruction to disregard cured the error, and the trial court acted within its discretion by denying Appellant’s request for mistrial.  
Thus, we overrule Appellant’s first issue. 

IV. Sufficiency of the Evidence

In Appellant’s second and third issues, she argues that the evidence was factually insufficient to show that she committed the offenses of kidnapping and unlawful restraint. 

A. Applicable Law

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.  
Watson v. State
, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); 
Drichas v. State
, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder’s determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder’s determination is manifestly unjust.  
Watson
, 204 S.W.3d at 414-15, 417; 
Johnson v. State
, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.  
Watson
, 204 S.W.3d at 417. 

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court “harbor a subjective level of reasonable doubt to overturn [the] conviction.”  
Id. 
 We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury’s resolution of a conflict in the evidence.  
Id. 
 We may not simply substitute our judgment for the fact-finder’s.  
Johnson
, 23 S.W.3d at 12; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a different result is appropriate, we must defer to the jury’s determination of the weight to be given contradictory testimonial evidence because resolution of the conflict “often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered.”  
Johnson
, 23 S.W.3d at 8.  Thus, we must give due deference to the fact-finder’s determinations, “particularly those determinations concerning the weight and credibility of the evidence.”  
Id. 
at 9.

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  Moreover, an opinion reversing and remanding on factual insufficiency grounds must detail all the evidence and clearly state why the finding in question is factually insufficient and under which ground.  
Goodman v. State
, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); 
Johnson
, 23 S.W.3d at 7.

B. Kidnapping Offense

Appellant contends that the evidence is factually insufficient to show that she had the intent to secrete or hold Brian in a place where he was unlikely to be found. 

Under the Texas Penal Code, a person commits the offense of kidnapping if she intentionally or knowingly abducts another person.  
Tex. Penal Code Ann
. § 20.03 (Vernon 2003).  “Abduct” means to restrain a person with intent to prevent his liberation by secreting or holding him in a place where he is not likely to be found, or by using or threatening to use deadly force. 
 Id. 
§ 20.01(2) (Vernon Supp. 2007).

A person acts intentionally, or with intent, with respect to the nature of her conduct or to a result of her conduct when it is her conscious objective or desire to engage in the conduct or cause the result. 
 Id. 
§ 6.03(a).  A person acts knowingly, or with knowledge, with respect to the nature of her conduct or to circumstances surrounding her conduct when she is aware of the nature of her conduct or that the circumstances exist. 
Id. 
§ 6.03(b).  A person acts knowingly, or with knowledge, with respect to a result of her conduct when she is aware that her conduct is reasonably certain to cause the result.  
Id.

If the actor intended at any time during the restraint to secrete or hold the victim in a place where he would not likely be found, the offense is complete. 
Santellan v. State
, 939 S.W.2d 155, 162 (Tex. Crim. App. 1997); 
Laster v. State,
 229 S.W.3d 788, 792 (Tex. App.—Fort Worth 2007, pet. struck); 
Price v.
 
State
, 35 S.W.3d 136, 140 (Tex. App.—Waco 2000, pet. ref’d) (op. on reh’g); 
King v. State
, 961 S.W.2d 691, 694 (Tex. App.—Austin 1998, pet. ref’d)
.  
Intent is a question of fact to be determined from all of the circumstances.  
Smith v. State
, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998). Intent may be inferred from the circumstantial evidence surrounding an incident including the acts, words, and conduct of the accused. 
 Id.; Patrick v. State
, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995), 
cert
. 
denied
, 517 U.S. 1106 (1996); 
Laster,
 229 S.W.3d at 792-93.  Proof that a victim is isolated from anyone who might be of assistance shows an intent to secrete or hold the victim in a place where he is not likely to be found. 
 Laster
, 229 S.W.3d
 
at 793; 
see Megas v. State
, 68 S.W.3d 234, 241 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d).

In this case, Appellant contends that the fact that Brian wandered to her apartment on his own and entered the apartment because he wanted a drink of water demonstrates her lack of intent.  She further asserts that Brian was not in a place where he was unlikely to be found because he was visible through her apartment window from the outside, public area. 

 
 After reviewing the evidence in a neutral light, we determine that the facts Appellant point to as evidence of her lack of intent actually weigh in favor of the opposite conclusion.  
See
 
Watson
, 204 S.W.3d at 414; 
Laster
, 229 S.W.3d at 794.  The record shows that the jury was presented with evidence that directly contradicted Appellant’s assertions that she did not intend to secrete Brian or hold him in a place he was unlikely to be found. 
 Acosta testified that when she first went out to the courtyard she noticed Appellant, whom she did not know, standing close to the children and watching them.  When Acosta came back outside after retrieving a sweater for Brian she noticed that he was no longer with the other children.  A child playing with Brian in the courtyard told police services assistant Liner that he saw Appellant take Brian from the courtyard to her apartment.  This evidence contradicts Appellant’s assertions that Brian merely wandered over to her apartment because he wanted a drink of water and that she only took Brian back to her apartment after she was unsuccessful in locating his mother.  

Further, the f
act that Appellant took Brian to her apartment, a private residence that was not accessible to the public, is significant in determining whether Appellant had the intent to secrete Brian.  Proof that a victim is isolated from anyone who might be of assistance shows an intent to secrete or hold the victim in a place where he is not likely to be found.  
Laster, 
229 S.W.3d at 793.  A jury could reasonably infer by Appellant’s conduct that she intended to isolate Brian by removing him from the courtyard where the other children were playing. 
 See Smith,
 965 S.W.2d at 518.  Furthermore, it is unlikely that Brian’s whereabouts would have become known had it not been for the fact that a child who witnessed Appellant taking Brian from the courtyard specifically identified Appellant’s apartment as the location where Brian was taken.  When Acosta and Liner arrived at Appellant’s apartment, the window shades were drawn, the door was locked, and no one answered despite their persistent knocking.
(footnote: 4)  Acosta was only able to determine that her son was inside the apartment when she got a glimpse of his feet through the window shade.  These facts contradict Appellant’s claim that Brian was in a place where he was likely to be found, and the jury was free to reject Appellant’s statement that she did not intend to secrete Brian in light of this evidence.
(footnote: 5)  
See Laster
, 229 S.W.3d at 793. 

After reviewing the evidence in a neutral light and giving deference to the jury’s determinations on the weight and credibility of evidence, we hold that the evidence Appellant presented does not so greatly outweigh the evidence supporting the conviction that the fact-finder’s conviction was manifestly unjust, nor, has the record clearly revealed that a different result is appropriate.  
See Watson
, 204 S.W.3d at 414-15, 417; 
Johnson
, 23 S.W.3d at 8, 11. 

Based on the foregoing and the applicable standards of review, we hold that the evidence is factually sufficient to support Appellant’s conviction for kidnapping.  Therefore, we overrule Appellant’s second issue.

C. Unlawful Restraint Offense

Appellant contends that the evidence was factually insufficient to show that she committed the offense of unlawful restraint. 

Rule 25.2(a)(2) of the Texas Rules of Appellate Procedure authorizes the trial court to enter a certification of a defendant’s right of appeal from a judgment of guilt or other appealable order. 
 See
 
Tex. R. App. P.
 25.2(a)(2).  

Here, Appellant was convicted of kidnapping and unlawful restraint.  However, the State waived Appellant’s conviction of unlawful restraint, and the case was submitted to the jury for punishment on the kidnapping conviction only.  The trial court never entered a judgment of guilt for unlawful restraint.  Therefore, Appellant has no right to appeal her conviction of unlawful restraint because the trial court never entered a judgment of guilt on that offense or other order. 
 See Mayes v. State
, 2005 WL 2898144, at *1 (Tex. App.—Amarillo Nov. 3, 2005, no pet.) (mem. op) (not designated for publication).  Accordingly, we overrule Appellant’s third issue. 

V. Conclusion

Having overruled Appellant’s three issues, we affirm the trial court’s judgment. 

BOB MCCOY

JUSTICE

PANEL B: LIVINGSTON, WALKER, and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: January 31, 2008

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
The State had two lawyers at trial while Appellant had three lawyers present.

3:
This defensive theory was maintained throughout the entire trial.  During opening statement, Appellant’s trial counsel asserted that after Brian wandered up to Appellant, she gave him some water and then walked with him around the complex trying to locate his mother; only when they were unable to find his mother did she take him back to her apartment, give him some more water, and change his shirt because it was filthy.

During cross-examination, Appellant’s trial counsel attempted to portray Appellant as a good Samaritan who had been denied the opportunity to explain her actions.

Lastly, Appellant testified that she intended to reunite Brian with his mother, and that she had only been trying to be a good Samaritan and help Brian.

4:
Police services assistant Liner testified that she knocked for approximately three to four minutes while simultaneously announcing the presence of the police.

5:
Appellant’s attempt to analogize her situation to 
Beeman v. State
, 828 S.W.2d 265 (Tex. App.—Fort Worth 1992, writ ref’d) is erroneous.  In that case, this court held that where the appellant took the clerk from the main area of the convenience store into a storeroom that was visible from the store’s public restroom, the evidence was insufficient to show that the appellant took the clerk to a place where she was unlikely to be found.  Here, Appellant took Brian to a private residence that, unlike a convenience store, was not accessible to the public.  The door was closed and locked, and the blinds were drawn.  The only reason Acosta was able to see her son was because she caught a glimpse of his shoes through an opening in the blinds.