

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| FRANK HERNANDEZ III, | | No. 08-24-00066-CR |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | 361st District Court |
| | § | |
| THE STATE OF TEXAS, | | of Brazos County, Texas |
| | § | |
| Appellee. | | (TC# 22-01630-CRF-361) |
| | § | |
| | § | |

## MEMORANDUM OPINION

A jury convicted Appellant Frank Hernandez III of aggravated assault with a deadly weapon. Hernandez raises a variety of issues on appeal, arguing the evidence is legally insufficient to support his conviction, that the trial court wrongly removed a juror, that it allowed improper argument, and that it erred in admitting and excluding certain evidence. Because we hold that the evidence is legally sufficient and the trial court committed no reversible error, we affirm the trial court's judgment.

## I. BACKGROUND

This case concerns a verbal spat that spilled from a bar into a parking lot, where it escalated into a physical fight involving multiple parties.[1] The altercation occurred during overnight hours,

---

[1] To avoid confusion and for general readability, we refer to certain parties involved in the altercation by first names only once they are fully identified. These individuals share surnames with other persons involved in the case. Otherwise, we will refer to Appellant and other witnesses by their surnames.

on February 18–19, 2022, at the Poets Billiards pool hall (the bar) in College Station, Texas. Two men were stabbed in the incident. During the jury trial,[2] the State presented testimony from multiple witnesses to include clientele of the bar, medical personnel, and law enforcement officers. In addition, the State admitted surveillance videos from the bar and numerous other videos captured by witnesses on their cell phones.

That evening, complainant, Alejandro Arredondo, spent time drinking and socializing with his friends, Felipe Berrios and Darius Mallard. Hernandez was also at the bar with his brother Ricky Hernandez, his wife Norma Hernandez, his son Jordan Hernandez, and Jordan's girlfriend Priscilla Gonzalez. The two groups did not previously know each other. Alejandro, who was intoxicated, asked Priscilla if she was single. From there, a verbal argument ensued between Hernandez, his family, and Alejandro, which resulted in the bar's bouncer, Charles Merchant, escorting Alejandro outside the establishment.

As Merchant followed Alejandro outside, Priscilla ran past him and similarly followed Alejandro, arguing with and cussing at him. Alejandro told her he was not going to fight a woman and for her to "go get her man." Priscilla went back into the bar to get Jordan. Priscilla, Jordan, Ricky, and Norma all went outside and the verbal altercation and threats continued. Darius and Felipe also went outside to find Alejandro as he was their ride. When they got outside, the scene was chaotic.

The two groups were faced off and multiple parties began swinging at each other. During the fight, Ricky pulled out a knife and struck at Alejandro and Darius. When the physical fight started, Hernandez was not yet present as he was inside paying his tab. When a witness went inside the bar and told the bartender to call the police because people were fighting, Hernandez first

---

[2] A jury trial was held in January 2023 which resulted in a hung jury and the trial court declared a mistrial. A second trial was held during November and December of 2023, which resulted in the conviction at issue in this appeal.

finished his beer then walked outside. Hernandez then joined the fight. While Alejandro was on the ground, Hernandez pulled out his own knife and stabbed Alejandro. Alejandro and Darius were able to run away and get into Felipe's truck. Felipe drove Alejandro and Darius to the hospital where they were treated for injuries that caused significant blood loss. Hernandez and his family fled the area before police arrived on scene.

Detective Michael Kennedy with the College Station Police Department received a call regarding victims of a stabbing. He responded straight to the hospital where Alejandro and Darius were being treated. On arrival, he was unable to speak with either Alejandro or Darius because they were incapacitated at the time. Felipe reported the bar parking lot as the crime scene location. He also provided a description of potential suspects and the vehicle in which one suspect left the bar. From the descriptions, Kennedy was able to identify Hernandez and Ricky as two possible suspects. Kennedy went to a potential address for Hernandez and observed the described vehicle with a matching license plate.

Additionally, Kennedy reviewed statements made by witnesses at the scene and collected surveillance videos from the bar. Kennedy identified the parties involved based on the totality of his investigation. Kennedy obtained arrest warrants for Hernandez and Ricky. Hernandez was indicted on one count of aggravated assault with a deadly weapon for injuries inflicted on Alejandro. The details of Ricky's arrest, charges, and disposition of a case, if any, are not included in our record.

The State's case against Hernandez proceeded to a jury trial. Throughout trial, Hernandez asserted he acted in self-defense and in defense of his family members, claiming that Alejandro had threatened to kill each of them while displaying a knife. In support, Hernandez presented testimony from three witnesses, Merchant, Ricky's attorney, and Norma.

3

Following the guilt innocence phase, the jury returned a verdict finding Hernandez guilty of aggravated assault as charged by the indictment. Hernandez elected for the trial court to assess his punishment and, following a contested hearing, the trial court noted an affirmative finding of a deadly weapon, a knife, in accordance with the jury's verdict. The trial court additionally found the enhancement paragraphs to be true and sentenced Hernandez to 40 years' confinement in prison.

Hernandez filed a motion for new trial and, after the trial court held a hearing, the trial court denied the motion. This appeal followed.

## II. ISSUES ON APPEAL

Hernandez lists six issues on appeal but only five issues correspond to his arguments, which we address. First, he contends the trial court deprived him of his right to a fair trial by removing a juror for a non-disabling reason and replaced that juror with an alternate. Second, he argues the State improperly shifted the burden of proof throughout trial in violation of his constitutional rights. Third, he maintains the State elicited speculative, cumulative, and irrelevant testimony, transforming the trial into a spectacle and prejudicing his substantive rights. Fourth, he urges the State's method of questioning and conduct during trial undermined the legal sufficiency of the evidence. Finally, he claims the trial court committed harmful error in excluding the testimony of one of his witnesses.

Because Hernandez's legal sufficiency challenge results in the greatest relief, if sustained, we address that issue first. *See Lopez v. State*, 615 S.W.3d 238, 248 (Tex. App.—El Paso 2020, pet. ref'd) (citing *Benavidez v. State*, 323 S.W.3d 179, 182 (Tex. Crim. App. 2010)).

## III. SUFFICIENCY OF THE EVIDENCE

Hernandez contends the State's method of presenting its case in chief—combined with an "improper post-hoc analysis"—undermined the legal sufficiency of the evidence. Specifically, he

4

argues the State's reliance on "speculative opinions" based on analysis of video evidence, not personal observations, "created a distorted narrative" inappropriate for a jury to assess whether Hernandez's belief that deadly force was necessary and reasonable in defense of himself and third persons. He contends the evidence was legally insufficient because it misled the jury into viewing the events as a controlled fight rather than "the chaotic and dangerous situation that justified [his] intervention to protect his family."

## A. Standard of review and applicable law

We construe Hernandez's complaint as contending there was insufficient evidence to support the jury's rejection of his self-defense and defense of others claim. The Court of Criminal Appeals has held that, "in a claim of self-defense or defense of third persons that would justify a defendant's use of force against another, the defendant bears the burden to produce evidence supporting the defense, while the State bears the burden of persuasion to disprove the raised issues." *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018). "The defendant's burden of production requires him to adduce some evidence that would support a rational finding in his favor on the defensive issue." *Id.* By contrast, the State's burden of persuasion does not require the production of any additional evidence; instead, it requires only that the State prove its case beyond a reasonable doubt. *Id.* "[I]n resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Id*. The issue of self-defense or defense of third persons raises a fact issue to be determined by the jury, for which they are free to accept or reject. *Saxton v. State*, 804 S.W.2d 910, 912 n.5 (Tex. Crim. App. 1991) (en banc).

5

When reviewing a challenge to the sufficiency of the evidence, we determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Witcher v. State*, 638 S.W.3d 707, 709–10 (Tex. Crim. App. 2022) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We do not reevaluate the evidence's weight and credibility, and we do not substitute our judgment for the factfinder's. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). We will defer to the jury's assessment of the credibility of the witnesses and the weight to be given to their testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We determine whether the necessary inferences are reasonable based on the cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Braughton*, 569 S.W.3d at 608.

A person commits aggravated assault with a deadly weapon by (1) intentionally, knowingly, or recklessly (2) causes bodily injury to another (3) and used or exhibited a deadly weapon during the commission of the assault. Tex. Penal Code Ann. § 22.01(a)(1), 22.02(a)(2). A defendant may justify aggravated assault with a claim of self-defense. *See* Tex. Penal Code Ann. § 9.31. To do so, a defendant must show that he reasonably believed his actions were immediately necessary to protect himself against another person's use or attempted use of unlawful force. *See* Tex. Penal Code Ann. § 9.31(a). Also, a defendant can justify his use of force against another if such force was used to protect a third person, and under the circumstances, the defendant reasonably believed the third person would be justified in defending himself and he reasonably believes his intervention is immediately necessary to protect the third person. *See* Tex. Penal Code Ann. § 9.33.

Neither Self-defense nor defense of others apply to verbal provocation alone. *See* Tex. Penal Code Ann. §§ 9.31(b)(1), 9.33(1); *Walters v. State*, 247 S.W.3d 204, 213 n.40 (Tex. Crim. App. 2007); *Miranda v. State*, 350 S.W.3d 141, 149 (Tex. App.—San Antonio 2011,

6

no pet.) (holding victim's verbal threats against defendant and his brother did not, by itself, justify the use of force in defense of himself or his brother); *Johnson v. State*, No. 03-08-00708-CR, 2009 WL 3319848, at *2 (Tex. App.—Austin Oct. 14, 2009, no pet.) (mem. op.) (providing the use of force against another in self-defense of a third party is not justified in response to verbal provocation alone). These defenses neither apply if the defendant provoked the other person, unless the defendant abandoned the encounter, and the other person persisted in his use or attempted use of unlawful force against the defendant. *See* Tex. Penal Code Ann. §§ 9.31(b)(4), 9.33(1).

### B. Analysis

On appeal, Hernandez argues the State presented a case requiring an "after-the-fact" review of the evidence by its pausing, slowing down, and zooming-in on the several videos. He contends the State's method of presenting the evidence "distort[ed] the reality of the situation and detract[ed] from the immediate danger [Hernandez] perceived at the time of the incident." Therefore, he argues, the jury's rejection of his claims of self-defense and defense of others was not rational. Hernandez's argument essentially requests this Court to conduct a sufficiency review after discrediting evidence admitted before the jury. This we cannot do. When conducting a sufficiency review, we consider all the evidence admitted, whether proper or improper. *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994) (en banc); *Chambers v. State*, 805 S.W.2d 459, 460 (Tex. Crim. App. 1991) (en banc). Even erroneously admitted evidence is considered in a sufficiency review. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993) (en banc). The propriety of the admitted evidence will be discussed in Hernandez's other presented issues, but in our sufficiency review, we will determine whether all the evidence before the jury was sufficient to support the conviction.

The evidence presented at trial showed that Alejandro's verbal altercation with members of the Hernandez family ensued after he talked to Priscilla. Alejandro testified that after he was escorted out of the bar, Priscilla followed him outside wanting to fight. The next thing he remembered he was on the ground. Alejandro testified he did not have a knife on him the night of the fight. Darius also testified that neither he nor Alejandro had a knife that night. Although Felipe testified he had a pocketknife with him before entering the bar, he returned it to his vehicle after he was turned away at the door. He also testified that neither Darius nor Alejandro had a knife that night. Further, Kennedy testified as to what he learned in his investigation and through watching videos of the fight. He believed Hernandez and Ricky were the only ones with knives. Merchant also testified that, from the video, it was clear Ricky threw the first punch leading to a physical fight. Coupled with this testimony, the jury viewed numerous surveillance videos and other cell phone videos depicting the fight in general.

Hernandez presented evidence in support of his defensive theories. First, witnesses testified that Alejandro used threatening language during the verbal altercation in the bar. Specifically, both Norma and Merchant testified that Alejandro was shouting that he was going to kill Hernandez and his family. Hernandez argues that due to Alejandro's threats against his family, he perceived an imminent threat and intervened for the protection of his family. Still, the use of force is not justified in response to verbal provocation alone. *See Braughton*, 569 S.W.3d at 606; *see also* Tex. Penal Code Ann. § 9.33 (providing that a person is justified in using force against another to protect a third person if the actor would be justified in doing so in self-defense). Additionally, Norma testified that Alejandro had a knife during the physical fight. She was the only witness that testified to seeing Alejandro with a knife and no other evidence confirmed the presence of any knife other than those displayed by Hernandez and Ricky. As the factfinder, the jury was free to reject Norma's testimony, and we must defer to the jury's credibility determination. *Brooks*, 323

8

S.W.3d at 899. The jury was also able to view the video evidence of the melee in deciding whether Alejandro had threatened Hernandez and others with a knife, and whether Hernandez's claimed belief of an imminent threat against himself and others was reasonable under the circumstances. *See Benavides v. State*, 763 S.W.2d 587, 588–89 (Tex. App.—Corpus Christi 1988, pet. ref'd) (determining a jury can "draw reasonable inferences and make reasonable deductions from the evidence as presented to it within the context of the crime"); *see also Braughton*, 569 S.W.3d at 608.

Accordingly, there is sufficient evidence in the record to rationally support the jury's determination that Hernandez committed the offense of aggravated assault with a deadly weapon and for it to reject his claims of self-defense and defense of others. The jury was in the position to believe the witnesses' testimonies and make fact findings as well from its viewing of the videos. Hernandez's contentions—wherein he argues that the State's repeated playing of the videos caused distortion of the evidence and the jury's findings were irrational—is not supported by legal authority nor by the totality of the evidence. For these reasons, we overrule Hernandez's fourth issue.

## IV. REMOVAL OF A JUROR

In his first issue, Hernandez contends the trial court erred in removing a juror for "non-disabling" reasons and replacing the juror with an alternate.

At the end of the fourth day of trial, one of Hernandez's subpoenaed witnesses had not shown up to testify. Hernandez obtained a writ of attachment for the witness. The following Monday, November 13, the trial court informed the jury that trial would not likely finish on that date as earlier anticipated. Hernandez next filed a motion for continuance, which the trial court granted. The trial court reset the trial to December 5 to provide time for law enforcement to locate the subpoenaed witness.

On December 1, the trial court held a hearing, outside the presence of the jury, where it explained there was an issue with the availability of one of the jurors for the December 5 date. The trial court noted that, during voir dire, the trial court informed the panel that trial would likely run through November 17, and it never discussed anyone's availability for the December 5 reset date. Juror 43 spoke up, explaining he had a business trip for a corporate meeting and he would not be available for trial. Specifically, Juror 43 noted he would not be able to focus on the trial if trial continued on December 5. Offering an alternative, Hernandez's counsel asked Juror 43 whether he could be available for trial on December 18. Juror 43 responded that he had a vacation scheduled on that date. The juror stepped out of the courtroom and the State argued the trial had been delayed multiple weeks already, through no fault of the State. Hernandez's counsel asked for a lengthier continuance until the juror could be back and participate as a juror.

The trial court discharged Juror 43 pursuant to Article 36.29 of the Code of Criminal Procedure, ruling the juror had become disabled and he was no longer able to fully and fairly perform his functions as a juror. The trial court denied Hernandez's motion for continuance. Hernandez next moved for a mistrial, which the trial court denied.

### A. Standard of review and applicable law

A juror who "dies or becomes disabled from sitting" during trial may be replaced by an alternate. Tex. Code Crim. Proc. Ann. art. 36.29(b). The Court of Criminal Appeals has traditionally interpreted "disabled from sitting" as involving "physical illness, mental condition, or emotional state which hinders one's ability to perform one's duties as a juror." *Landrum v. State*, 788 S.W.2d 577, 579 (Tex. Crim. App. 1990) (en banc). *Carrillo v. State*, 597 S.W.2d 769, 770–771 (Tex. Crim. App. 1980). It has also defined the term "disabled" to mean any condition that inhibits the juror from fully and fairly performing the functions of a juror. *See Griffin v. State*, 486 S.W.2d 948, 951 (Tex. Crim. App. 1972). The Court of Criminal Appeals has also upheld a trial

court's decision to excuse a juror for disability who was emotionally upset over the death of his father-in-law and needed to go out of state to be with his wife. *See Clark v. State*, 500 S.W.2d 107 (Tex. Crim. App. 1973). The Court has also upheld a trial court's decision to excuse a juror who stated he would be unable to concentrate due to time pressures associated with moving and starting a new job in a new city. *See Ramos v. State*, 934 S.W.2d 358, 369 (Tex. Crim. App. 1996).

The determination as to whether a juror has become "disabled" within the meaning of Article 36.29 lies within the trial court's discretion; absent an abuse of such discretion, we will find no reversible error. *See Scales v. State*, 380 S.W.3d 780, 784 (Tex. Crim. App. 2012). It is not the role of the appellate court to substitute its own judgment for that of the trial court and we must assess, after viewing the evidence in the light most favorable to the trial court's ruling, whether the trial court's ruling was arbitrary or unreasonable. *Id.* (citing *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). We must uphold the ruling if it lies within the zone of reasonable disagreement. *See id.*

### B. Analysis

The record establishes that the original jury panel was told that the trial would have been finished by November 14. Still, the trial was continued past this date and Juror 43 notified the court he would no longer be able to serve due to work and a planned vacation. Juror 43 explained that he would not be able to focus on the trial if he were required to serve during the extended period.

Hernandez asserts that Juror 43's professional obligations did not constitute a "disability," as provided by law. We conclude, however, that none of Hernandez's cited cases are controlling in this case. *See Scales*, 380 S.W.3d at 786 (finding appellant's substantial rights were violated when a trial court replaced a juror with an alternate because the juror refused to deliberate); *Trinidad v. State*, 312 S.W.3d 23, 29 (Tex. Crim. App. 2010) (discussing issue of the presence of an alternate juror in the jury room during jury deliberations); *Whitehead v. State*, 437 S.W.3d 547, 554–56

11

(Tex. App.—Texarkana 2014, pet. ref'd) (holding the trial court abused its discretion in removing a juror, finding the juror was unable to perform his duties as a juror, when juror revealed to the court that he recorded his thoughts on the trial but did not record the trial or play the recording for the other jurors). Contrary to Hernandez's argument, the Court of Criminal Appeals has held that a juror was properly discharged when there was evidence that he "would be unable to concentrate due to the time pressures associated with moving and starting a new job." *Ramos*, 934 S.W.2d at 369. The emotional pressures suffered by the juror, the Court explained, justified the trial court's decision to discharge him. *Id.*

The term "disabled" encompasses "a physical illness, mental condition, or emotional state" which hinders a juror's ability to perform his duties as a juror. *See Hill v. State*, 90 S.W.3d 308, 315 (Tex. Crim. App. 2002) (en banc). Here, Juror 43 expressed his inability to focus on the trial if he were forced to miss additional work. Based on the trial court's examination of Juror 43 and its ability to observe his demeanor and emotional state, the trial court could have found that the risk of missing his work obligations brought about a condition that inhibited, hindered, or prevented Juror 43 "from fully and fairly performing the functions of a juror." *See Reyes v. State*, 30 S.W.3d 409, 411 (Tex. Crim. App. 2000) (en banc). Viewing the evidence in the light most favorable to the trial court's ruling, as we must, we cannot say the trial court's dismissal of Juror 43 as "disabled" within the meaning of Article 36.29 was an arbitrary or unreasonable decision. *See Scales*, 380 S.W.3d at 784.

Therefore, we overrule Hernandez's first issue.

## V. IMPROPER BURDEN SHIFTING

In his second issue, Hernandez contends the State asked questions and made multiple arguments during witness examination and closing argument that improperly shifted the burden of proof. We first determine whether Hernandez's complaints have been preserved for review.

### A. Preservation

From Hernandez's briefing, he presents four different instances where he asserts the State improperly shifted the burden and improperly attacked him over counsel's shoulders. To preserve a complaint for appellate review, a party must first present a timely request, objection, or motion to the trial court that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009). Second, the trial court must rule on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004) (en banc). The complaining party must generally pursue an objection until he receives an adverse ruling. *Anderson v. State*, 932 S.W.2d 502, 507 (Tex. Crim. App. 1996) (en banc). Additionally, the issue on appeal must comport with the objection made at trial. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). "An objection stating one legal theory may not be used to support a different legal theory on appeal." *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (en banc). With this in mind, we will determine whether each of Hernandez's complaints are preserved.

First, Hernandez presents complaints regarding some of the State's questioning of Kennedy during its direct examination. The State played a video of the fight captured on a cell phone and discussed with Kennedy how the evidence helped with his investigation of the case. Laying a foundation, the State asked Kennedy whether he would review information from different sources. Kennedy answered yes. When the State followed by asking whether sources could include defense attorneys, Kennedy again answered yes. Hernandez objected to the line of questioning asserting the State was attempting to shift the burden of proof. The trial court sustained the objection and gave an instruction to the jury, on Hernandez's request, informing the jury that the State shouldered

the burden of proof. Hernandez moved for a mistrial, which the trial court denied. On appeal, Hernandez contends the State improperly shifted the burden of proof and "suggested that [Hernandez] needed to provide affirmative evidence to disprove the State's case." We conclude Hernandez preserved this complaint for appellate review.

Next, during the same line of questioning, Kennedy explained he received the video of the fight from defense counsel. The State then asked whether the video helped the investigators determine that the knife used in the offense belonged to Ricky Hernandez. Hernandez objected as to relevancy, which the trial court sustained. On appeal, Hernandez asserts the State was "[i]ntimating that defense counsel incriminated one of the very people [Hernandez] sought to protect." Because Hernandez objected as to relevancy at trial, and now on appeal complains the State made an improper attack on defendant, we conclude Hernandez has failed to preserve this complaint for review. *See* Tex. R. App. P. 33.1(a); *Broxton*, 909 S.W.2d at 918.

Next, Hernandez challenges the questioning of Donnie Adreski—Ricky Hernandez's defense counsel who had been called by Hernandez—during the State's cross examination. Adreski was called to testify that he viewed cuts on Ricky's hand shortly after the fight at the bar. On cross-examination, the State asked Adreski about Ricky's injuries that he himself had photographed. When the State asked whether Adreski photographed multiple injuries, Adreski responded by asserting his client's attorney/client privilege. The State then asked whether he took any other photographs that he considered important. Adreski again asserted attorney/client privilege. The State argued that Adreski had waived attorney/client privilege, which the trial court rejected. The State then asked the trial court to instruct the jury to strike all of Adreski's testimony. The trial court ordered the parties to approach. At the bench, Hernandez requested an instruction for the jury to disregard the State's statement related to privilege. Hernandez then asked for a mistrial based on the statements made by the State, which the trial court denied. On the record

14

presented, it is not clear to us what specific challenges Hernandez raised to the State's "statements" during trial. Still, from our review of the record, Hernandez did not lodge an objection or bring to the attention of the trial court his complaint of the State's purported burden shifting nor complain of an unfair attack on Hernandez as he now claims on appeal. For this reason, we conclude Hernandez failed to preserve his complaint on appeal. *See* Tex. R. App. P. 33.1(a); *Broxton*, 909 S.W.2d at 918.

Finally, Hernandez asserts the State "repeated these burden-shifting comments during closing arguments, emphasizing the lack of testimony from certain defense witnesses." Hernandez does not specifically point to any comments; rather, he merely cites two pages in the record. His cited page numbers include a portion of the State's argument where counsel is playing the video of the fight and pointing out that Hernandez never made statements of self-defense in the video. On review of the record, there is no reference to witnesses' testimonies. Moreover, Hernandez did not lodge any objections to the State's referenced arguments. Accordingly, any complaint regarding the closing argument is not preserved. *See* Tex. R. App. P. 33.1(a).

## B. Shifting the burden

Hernandez's only preserved complaint referred to the State's questioning on whether "defense attorneys" provide information in support of the investigation. Because Hernandez's objection was sustained, and the trial court gave the requested instruction, the issue now before us narrows to whether the trial court abused its discretion in denying his motion for new trial.

### (1) Applicable law

When the trial court sustains an objection and instructs the jury to disregard a statement but denies a defendant's motion for a mistrial, the issue is whether the trial court denying the mistrial was an abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004) (en banc); *Faulkner v. State*, 940 S.W.2d 308, 312 (Tex. App.—Fort Worth 1997, pet. ref'd).

15

Generally, error contained in improper statements, questions, or arguments by a prosecutor can usually be corrected by an instruction to disregard, thereby obviating the need for a mistrial. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (en banc); *Calderon v. State*, 847 S.W.2d 377, 380 (Tex. App.—El Paso 1993, pet. ref'd).

In assessing the curative effect of the trial court's instruction to disregard, the correct inquiry is whether, in light of the record as a whole, the argument was extreme, manifestly improper, injected new and harmful facts into the case, or violated a mandatory statutory provision and was thus so inflammatory that the instruction to disregard was ineffective. *Wesbrook*, 29 S.W.3d at 115–16. If the instruction cured any prejudicial effect caused by the improper argument, we should find that the trial court did not err. *Faulkner*, 940 S.W.2d at 312. Only if we determine the instruction was ineffective, do we go on to determine whether, in light of the record as a whole, the argument had a substantial and injurious effect or influence on the jury's verdict. Tex. R. App. P. 44.2(b); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

### (2) Analysis

Hernandez contends the statements by the State directly suggested Hernandez needed to provide affirmative evidence to disprove the State's case. In response, the State asserts that it was not shifting the burden but rather explaining Kennedy's delay in taking certain actions in his investigation. Specifically, it asserts Kennedy merely explained that he did not have possession of the video in question until it was given to him by defense counsel. We disagree that the questioning by the State shifted the burden from it. Rather, the State's questioning provided context to Kennedy's investigation.

Still, the trial court sustained Hernandez's objection and gave the jury an instruction that the burden is always on the State. Assuming, arguendo, that the State's questioning improperly shifted the burden of proof, nothing in the record suggests the questioning was of such a nature

16

that the State's questions were "clearly calculated to inflame the minds of the jury or so indelibly ingrained in their minds that [they were] not susceptible to withdrawal or retraction by an instruction to disregard." *Calderon*, 847 S.W.2d at 380; *Faulkner*, 940 S.W.2d at 313 (we presume the jury will obey an instruction to disregard). We conclude that the trial court's verbal instruction to the jury, and written instructions on the burden of proof, were sufficient to cure any harm that might have resulted. *See Garza v. State*, 633 S.W.2d 508, 515 (Tex. Crim. App. [Panel Op.] 1981) (finding the "trial court's prompt instructions to the jury were sufficient to protect the rights of the appellant").

Accordingly, we conclude the trial court did not abuse its discretion in overruling the motion for mistrial. Hernandez's second issue is overruled.

## VI. ADMISSION OF EVIDENCE

In his third issue, Hernandez contends the State elicited "speculative, cumulative, and ultimately irrelevant testimony." He asserts the evidence did not aid in establishing any fact of consequence and was overly prejudicial. *See* Tex. R. Evid. 401, 403.

### A. Standard of review and applicable law

This Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *See Inthalangsy v. State*, 634 S.W.3d 749, 754 (Tex. Crim. App. 2021). To preserve a complaint for appellate review, a party must first present a timely request, objection, or motion to the trial court that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Lovill*, 319 S.W.3d at 691–92. Second, the trial court must rule on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez*, 138 S.W.3d at 341. The complaining party must generally pursue an objection until he receives an adverse ruling. *Anderson*, 932 S.W.2d at 507.

17

**B. Analysis**

In Hernandez's third issue, he makes a general complaint that the State repeatedly asked Kennedy and Carl Moon—a witness of the fight—who was winning the fight while reviewing the video of the fight. In support, Hernandez cites numerous record citations without further development of his argument. From our review of the cited pages, Hernandez's complaints are not preserved for review as he either failed to lodge any objection to the complained of testimony, or where an objection was lodged, he failed to obtain an adverse ruling.

Hernandez's only developed argument on appeal concerns Kennedy's testimony. Throughout his testimony, the State would play the video of the fight, repeatedly asking Kennedy to describe what was happening in the scene depicted. For example, at one point, while the video played, Kennedy said: "[the] [m]otion that [Darius] makes is actually saying he's got a knife." Hernandez objected both as to "state of mind" and as to the evidence being cumulative. The trial court sustained the objections. The State responded by asking the court whether it could continue to play the video throughout its examination. To this inquiry, Hernandez asserted the jury could watch the videos themselves. The trial court directed counsel to approach for a conference at the bench. Hernandez's counsel asserted he had given "a lot of leeway with this narrative of these videos, but it's starting to get prejudicial where he's making these opinions that he can't make." In response, the State objected to counsel's remarks, saying he was "implying" the State was doing something unethical. The trial court responded by stating: "Stop. Your objection is overruled."

It is unclear to us from this record whether the trial court had overruled the State's objection to counsel's remark or Hernandez's objection to evidence on grounds of prejudice. Assuming the trial court overruled Hernandez's evidentiary objection, we conclude he has failed to cite to authority establishing that a trial court abuses its discretion by allowing a party to replay, slow down, or zoom in on a video admitted as evidence. *Cf. Jaramillo v. State*, No. 05-22-00951-CR,

18

2024 WL 2796277, at *7 (Tex. App.—Dallas May 31, 2024, no pet.) (mem. op.) (applying a Rule 403 analysis to the replaying of an already admitted video exhibit and holding that replaying the video at slower speed was not needless or that any such danger did not substantially outweigh the probative value of replaying the video). Also, in viewing the record as a whole, we note that Hernandez failed to object to other instances of Kennedy's testimony where the State replayed, slowed down, and zoomed in on the video. *See Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) ("An error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection.").

For these reasons, we overrule Hernandez's third issue.

## VII. EXCLUSION OF DEFENSE WITNESS TESTIMONY

In Hernandez's fifth issue, he contends it was error to exclude the testimony of Joe Ramirez. He asserts the exclusion of this witness denied him his right to a fair trial. During his case in chief, Hernandez sought to call Ramirez as a witness. After multiple continuances and a writ of attachment, the trial court held a hearing outside the presence of the jury where Ramirez was present with counsel. Hernandez's counsel proffered that Ramirez would testify that he witnessed the fight and saw Alejandro with a knife. Ramirez's attorney argued that Ramirez had an absolute right to assert his Fifth Amendment privilege because he had pending felony drug charges against him. Hernandez created a bill of review in which Ramirez pleaded the Fifth in response to all of Hernandez's questions. The trial court ruled that, after balancing Hernandez's right to compel witnesses, it would not compel Ramirez to waive his Fifth Amendment right to remain silent.

On appeal, Hernandez contends the trial court's ruling violated his right to a full and fair defense under due process and due course of law. *See Chambers v. Mississippi*, 410 U.S. 284, 298 (1973); *Potier v. State*, 68 S.W.3d 657, 664 (Tex. Crim. App. 2002) (en banc). He further contends

that the trial court erred in denying his motion for new trial on the grounds of newly discovered evidence. At the motion for new trial hearing, Ramirez testified that Alejandro wielded a knife during the fight which Hernandez contends "presented an unbiased view of a real situation [Hernandez] faced."

Hernandez neither sets forth nor discusses the law applicable to the granting of a new trial on these grounds. *See* Tex. Code Crim. Proc. Ann. art. 40.001 ("A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial."); *Carsner v. State*, 444 S.W.3d 1, 2–3 (Tex. Crim. App. 2014) (setting forth a four-pronged test a defendant must satisfy in order to be entitled to a new trial on the basis of newly discovered or newly available evidence). Hernandez simply asserts a conclusory statement that he "met all four prongs of *Carsner* and argued as such." Accordingly, Hernandez's fifth issue is waived as inadequately briefed. *See* Tex. R. App. P. 38.1(i).

## VIII. CONCLUSION

Having overruled all of Hernandez's issues, we affirm the trial court's judgment of conviction.

GINA M. PALAFOX, Justice

July 15, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

(Do Not Publish)

20